733 P.2d 360

**In the Matter of Vince D'ANGELO, Attorney at Law.**

No. 15906.

Supreme Court of New Mexico.

July 28, 1986.

Rehearing Denied Sept. 15, 1986.

Certiorari Denied Jan. 27, 1987.

See 104 S.Ct. 952.

Harris L. Hartz, Albuquerque, for Board.

William S. Dixon, Albuquerque, for respondent.

## OPINION

PER CURIAM.

This matter having come before this Court on March 10, 1986, after completion of disciplinary proceedings conducted pursuant to NMSA 1978, Rules Governing Discipline (Repl.Pamp.1985), wherein attorney Vince D'Angelo (D'Angelo) was found to have engaged in acts of misconduct in violation of NMSA 1978, Code of Prof. Resp. Rules 1–102(A)(1), 5–101(A), 5–104(A), 7–101(A)(3) (Repl.Pamp.1985), the Court adopts the findings and recommendations of the Disciplinary Board. Those findings are summarized as follows:

1. D'Angelo undertook representation of Margaret O'Rourke (O'Rourke) in June of 1979 concerning a workmen's compensation claim and other matters. Throughout 1979, O'Rourke consulted with D'Angelo and his associate, Don Vigil, on a variety of legal matters. O'Rourke sought a lump sum payment of workmen's compensation benefits, and Mr. Vigil filed suit on her behalf in this matter in October, 1979. O'Rourke also sought assistance in obtaining social security benefits, in getting out of a contract to purchase a water softener, in possibly pursuing a wrongful death action, and in preparing a will for her and a trust for her children. At all times material to the instant action, an attorney-client relationship existed between O'Rourke and D'Angelo's law firm.

2. D'Angelo was the owner and president of a New Mexico corporation known as Nacon, Inc., (Nacon) which was organized in 1979 for the purpose of constructing office buildings, multi-family dwellings and acting as a general contractor. In May or June of 1980, D'Angelo introduced O'Rourke to one of Nacon's employees, Wayne Pirtle (Pirtle), for the purpose of

discussing a possible investment by O'Rourke in a fourplex to be constructed by Nacon. D'Angelo failed to disclose to O'Rourke that he was the owner and president of Nacon. D'Angelo further failed to disclose the background of Pirtle and the fact that Pirtle had just been released from prison on a felony conviction.[1] D'Angelo failed to advise O'Rourke of the risks of the investment of her funds in Nacon and that Nacon had no substantial assets. He also failed to prepare mortgages or other security instruments to protect the interests of O'Rourke in the investment of her funds in Nacon. D'Angelo failed to advise O'Rourke that her interests could conflict with his interests and that she was free to seek other legal counsel to advise her in the Nacon transaction.

3. O'Rourke ultimately relinquished $90,000 to Nacon at the inception of the contract. O'Rourke, who thought D'Angelo to be her attorney and protecting her interests in her dealings with Nacon, asked D'Angelo if the contract was satisfactory. D'Angelo informed her that it was a standard contract and everything was in order. At the closing, O'Rourke was required to supply a certificate of deposit to be used as collateral for her $90,000 bank note. Again, believing that D'Angelo was acting as her attorney, O'Rourke inquired of him if this was customary procedure. D'Angelo informed her that she needn't worry, everything was proper.

4. For various reasons, O'Rourke's fourplex was never completed and she lost her $90,000 investment.[2]

5. D'Angelo's actions in entering into a business transaction with a client without full disclosure were in violation of Rules 1–102(A)(1), 5–101(A), 5–104(A), 7–101(A)(3) of the Code. The Disciplinary Board recommended that Vince D'Angelo be suspended for a period of one year.

In attacking the Board's recommendation, D'Angelo argues that the hearing committee's findings of fact are unsupported by clear and convincing evidence, that there was no attorney-client relationship existing between D'Angelo and O'Rourke at the time of the transaction between O'Rourke and Nacon (D'Angelo's corporation), and that D'Angelo's conduct was ethical throughout. We disagree.

D'Angelo argues that the standard of proof in disciplinary proceedings is clear and convincing evidence. The Board apparently believed that the standard of proof required was that of clear and convincing evidence. The Board's counsel argued to the Court that the evidence in the record met the standard of clear and convincing evidence and recommended D'Angelo's suspension. Clear and convincing evidence must "instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Sedillo,* 84 N.M. 10, 12, 498 P.2d 1353, 1355 (1972).

We have reviewed the record and agree that the evidence in this case meets the test required for clear and convincing evidence. However, we believe the Board applied the incorrect standard.

■ From 1916 to 1983, the standard of proof that was utilized was clear and convincing evidence. *See In re Marron,* 22 N.M. 252, 160 P. 391 (1916). This standard of proof was previously adopted by court rule and appears at Supreme Court Rule 3, NMSA 1953, Section 21–2–1(3), Paragraph 1.10 (Supp.1961). This rule stated in pertinent part:

> To warrant a finding of misconduct in contested cases, the facts must be established by clear and convincing evidence.

The rule and statutory section were renumbered (*see* NMSA 1953, Repl. Vol. 4 (1970) Section 18–4–8(c) (Supp.1975)), but the standard remained the same. Then, on April 15, 1983, Rule 8 was withdrawn when the attorney disciplinary system in New Mexico was revised, leaving no express state-

---

1. Pirtle's conviction was subsequently set aside.

2. In a subsequent civil action against D'Angelo, O'Rourke has recovered her full $90,000 investment.

ment by court rule as to the standard of proof in disciplinary proceedings. Thus, the requirement for a standard of proof in disciplinary proceedings of clear and convincing evidence is supported by case law decided under a now repealed rule. This former standard conflicts with the reasoning of this Court in the recent case of *Foster v. Board of Dentistry,* 103 N.M. 776, 714 P.2d 580 (1986). In *Foster* this Court stated in pertinent part that:

> [I]t is only where allegations such as fraud are involved or where the clear and convincing burden has been established by statute that such a higher burden is allowed in civil cases.

*Id.* at 778, 714 P.2d at 582. Thus, absent an allegation of fraud or a statute or court rule requiring the higher standard, the standard of proof in administrative hearings is a preponderance of the evidence. Since *Foster* did not involve any allegations of fraud or a statute specifying that the standard should be clear and convincing in cases under the Uniform Licensing Act, this Court determined that the standard in such cases was a preponderance of the evidence.

 It is true that many disciplinary cases involve allegations of fraudulent conduct and thereby, under *Foster,* a clear and convincing standard of proof is appropriate. However, other disciplinary cases (such as the instant case), do not involve fraud and therefore, under *Foster,* the usual standard of proof is to be applied. In disciplinary proceedings where fraud has not been alleged, the standard of proof is a preponderance of the evidence. In this case, we reiterate that the record on appeal meets the clear and convincing evidence standard, which *includes* the lesser standard of a preponderance of the evidence, to support the Board's recommendation of suspension.

The evidence at the hearing supports the finding that an attorney-client relationship existed between D'Angelo and O'Rourke. D'Angelo never clearly stated to O'Rourke that he was not acting as her attorney, O'Rourke reasonably believed that D'Ange-

lo was acting as her attorney and protecting her interests in the Nacon transaction, and more importantly, D'Angelo's own intention was to act for O'Rourke in the Nacon transaction. D'Angelo stated at the hearing that "she [O'Rourke] didn't need a lawyer. I was going to look out for her, at least that was my feeling and my attitude at all points."

 The evidence is that D'Angelo never made a full disclosure to O'Rourke regarding his involvement in Nacon. The testimony at the hearing was that O'Rourke may have known that D'Angelo owned Nacon because Nacon had its office adjacent to the D'Angelo law firm offices and, various parties, including D'Angelo, told O'Rourke that D'Angelo had bought a construction company. Again, this evidence meets both standards. However, even if O'Rourke knew that D'Angelo owned and was president of Nacon, this is not enough to meet the requirements of Rules 5–101(A) and 5–104(A). Rule 5–104(A) "prohibits an attorney from entering into a business transaction with a client where the attorney and the client have differing interests and where the client would expect the attorney to exercise his professional judgment for the client's protection *unless the inherent problems are disclosed to the client and his informed consent obtained.*" *In re Chowning,* 100 N.M. 375, 376, 671 P.2d 36, 37 (1983) (emphasis added). An attorney has an affirmative duty to fully inform a client, not only of the attorney's interest in the transaction, but also how such interest might affect the attorney's personal judgment and that the client is free to seek outside legal advice regarding the transaction. This was not done in the instant case.

 Thus, based upon the evidence that an attorney-client relationship existed during the time of the transaction herein involved, and the fact that D'Angelo did not give full disclosure to O'Rourke in his business dealings with her, we determine that D'Angelo's conduct does not meet the ethical standards required of a member of the New Mexico Bar and IT IS THEREFORE ORDERED that:

Vince D'Angelo be suspended from the practice of law in the State of New Mexico for a period of twelve (12) months effective August 15, 1986 and, prior to being readmitted, D'Angelo be required to take the Multistate Professional Responsibility examination and receive a passing grade of at least seventy-five percent (75%); and that costs of this action in the amount of $2,661.93 be paid by D'Angelo to the Disciplinary Board no later than September 15, 1986.

IT IS SO ORDERED.

SOSA, Senior Justice, dissenting.

With the majority opinion in this matter, I disagree for two reasons:

First, I have difficulty in concluding that the evidence is clear and convincing on the existence of an attorney-client relationship at all material times.

Second, and more importantly, I must take issue with the movement of the majority away from clear and convincing evidence as the standard of proof in a disciplinary proceeding such as this, where a person's reputation and very livelihood are at risk. I believe that the property interest in a professional license is entitled to the due process protections of the Constitutions of the United States and New Mexico. I am troubled, therefore, by the decision of this Court to jettison a body of case law dating back to 1916, simply because a rule of this Court has been withdrawn. The majority incorrectly implies that case law has followed the rule. In fact the opposite is true. Supreme Court Rule 3, paragraph 1.10 was only adopted by this Court on August 22, 1960, some 44 years after our precedent had been established. Compiler's notes, NMSA 1953 Comp.

I did not participate in *Foster v. Board of Dentistry*, 103 N.M. 776, 714 P.2d 580 (1986), on which the majority relies for lowering the standard of proof in licensing proceedings from clear and convincing evidence to a preponderance of the evidence. The majority recognizes that *Foster* conflicts with the traditional standard which all parties had assumed was applicable in the case at bar. In this context, the *Foster* decision is erroneous as to both precedent and policy. In my judgment, *Foster* does not expressly overrule our case law dating back to 1916. Moreover, the portion of *Foster* which lowers the standard of proof is not part of the holding of the case, but is merely dicta, in the nature of an advisory opinion, which is not the proper method to introduce such a drastic revision of our legal doctrine.

The present case does expressly overturn our precedents, even though it could have been decided and the same result reached without such disruption. I cannot concur with the lowering of the burden on those who seek to cancel a professional license. Obviously, the public needs to be protected against misdeeds of lawyers. Such misdeeds, however, should be proven by a clear and convincing standard. A lawyer also has some rights, particularly when his license to practice his chosen profession is in jeopardy. Therefore, I must object to the imposition of a standard of proof which endangers those rights.

For the foregoing reasons, I respectfully dissent.