1997-NMSC-035

943 P.2d 1032

**In the Matter of Robert RICHARDS, Esq., An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

No. 24472.

Supreme Court of New Mexico.

Aug. 15, 1997.

Sally Scott–Mullins, Deputy Chief Disciplinary Counsel, Albuquerque.

Robert Richards, Santa Fe.

## OPINION

PER CURIAM.

(1) This matter came before the Court on the recommendation of the disciplinary board that Robert Richards be publicly censured for knowingly making a false statement of material fact in a brief filed in the New Mexico Court of Appeals for the purpose of deceiving the appellate court. This Court, having considered the recommendation and being sufficiently advised, adopts the recommendation and orders that respondent be publicly censured for violation of his duty of candor to the court.

(2) Respondent filed a request for hearing before this Court pursuant to Rule 17–316 NMRA 1997, alleging there was not substantial evidence in the record to support the findings of the disciplinary board, that significant questions of law exist, and that issues of substantial public interest are involved. Pursuant to Rule 17–316, this Court may grant a request for hearing to review the recommendations of the disciplinary board; however, we determined that respondent failed to provide a basis for raising these issues sufficient to justify the exercise of the Court's discretion in favor of conducting a hearing.

(3) The disciplinary proceeding was conducted pursuant to the Rules Governing Discipline, 17–101 through 17–316 NMRA 1997. The specification of charges filed by disciplinary counsel contained two counts both alleging violations of Rule 16–303 of the Rules of Professional Conduct, which prohibits a lawyer from knowingly making false statements of material fact to a court or tribunal or knowingly omitting to disclose material facts to a court or tribunal. Violations of related rules were also alleged in each count. As to the first count of the charges, neither the hearing committee nor the disciplinary board found that respondent knowingly failed to advise the court of a material fact. As to the second count, however, both the hearing committee and the disciplinary board found that respondent's omission from a quotation in his brief of a portion of dialogue between himself and the trial judge, with no indication that there was an omission, was a knowing misrepresentation of material fact. Pursuant to Rule 17–316(D), this Court may accept or reject any or all of the disciplinary board's findings and conclusions and impose the recommended discipline or lesser or greater discipline. In this case, the Court will not disturb the board's findings and conclusions and will impose the recommended discipline of public censure pursuant to Rule 17–206(A)(4).

(4) The underlying litigation out of which this disciplinary proceeding arose was brought by respondent, who appeared *pro se* throughout virtually the entire case. At one point in the protracted course of the district court case, respondent sought to depose a representative of a nonparty deponent, Cabaret Enterprises, Inc., d/b/a Rodeo Nites. Rodeo Nites was a country and western nightclub at which the events which were the subject of respondent's claims against the defendant, Arthur Adair, occurred. Adair and his attorney, George M. Scarborough, appeared for the deposition, but, for reasons which are not pertinent to this public censure, Rodeo Nites did not. Respondent filed a show cause motion directed to Rodeo Nites for failing to appear at the deposition. Scarborough filed a motion on behalf of Adair, seeking to recover lost wages and attorney's fees from Richards for their appearance for the deposition.

(5) At a hearing on all pending motions in January 1994, the district court ordered issuance of a show cause order and instructed respondent on the necessity of having it served on the nonparty deponent. There was a discussion of hearing both motions addressing the deposition at one time, since both arose from the same set of facts. No date was set at that time. Respondent then prepared a show cause order which resulted in a hearing being held on March 1, 1994.

(6) At the March 1, 1994, hearing respondent appeared *pro se*, Adair appeared through Scarborough, and Rodeo Nites appeared through Patrick Brito, Esq., who had filed a response to respondent's show cause motion shortly before the hearing. At various times, and for reasons that are neither relevant here nor particularly persuasive, respondent repeatedly contended that Scarborough not only represented Adair, but also represented Rodeo Nites.

(7) Early in the March 1, 1994, hearing Scarborough asked the trial judge if she were also going to hear Adair's motion for attorney's fees and lost wages arising from the deposition debacle. Although there was ample opportunity for objection, respondent said nothing. The judge said she would take the matter under advisement. Later, at the conclusion of respondent's testimony, Scarborough asked if he should proceed with his motion. When the judge told him to proceed, respondent objected, asking if Scarborough represented Rodeo Nites. The judge told him that there was an entry of appearance from counsel for Rodeo Nites, that Scarborough had a motion to present for attending the deposition, and that she was going to hear it. The judge ultimately denied respondent's show cause motion and awarded attorney's fees and lost wages to Adair and attorney's fees to Rodeo Nites.

(8) In his appeal from the district court, respondent argued, *inter alia*, that Scarborough should not have been permitted to present Adair's motion because respondent had not received notice that it would be heard at the same time as his show cause motion. This, respondent contended, deprived him of his right to procedural due process. In its Memorandum Opinion, the Court of Appeals stated as follows:

> Early in the hearing Scarborough asked the district court also to decide Adair's motion for attorney's fees and sanctions arising from the same scheduled deposition. Without objection by Richards, the court agreed to take the matter under advisement.

(9) Respondent then filed Appellant's Motion for Rehearing and Appellant's Memorandum Points and Authorities in Support of His Motion for Rehearing. In the rehearing memorandum, respondent stated that it was not correct that he had failed to object to Adair's motion being heard. He argued that he had objected "when the trial court decided to allow Mr. Scarborough to make his argument." Respondent then set forth the following dialogue that he stated was taken from the "transcript of proceeding":

> SCARBOROUGH: Your Honor, I don't know if you are going to hear my motion, so I don't know whether you need to examine this.
>
> JUDGE MAES: We will go ahead with your motion.
>
> RICHARDS: Your Honor, may I object?

(Tape 1, March 1, 1994, # 2756). The trial court made it clear it understood objection when it stated.

JUDGE MAES: Mr. Scarborough has a motion for attorney fees against you for having to attend this deposition. What he has been asking since we started was for the court to hear that motion. I told him I would take it under advisement and now I think we should go ahead and deal with that motion as well and I will allow him direct examination on his motion for the attorney's fees.

(Tape 1, March 1, 1994, # 2825).

In its Order Denying Motion for Rehearing and Referring Appellant to Disciplinary Board, the Court of Appeals noted that the excerpt quoted above seemed to support respondent's argument that he had objected to the court hearing Adair's motion. The Court of Appeals stated that "that appearance is achieved by omitting the discussion between the last quoted statement by Richards and the last quoted statement by Judge Maes." The Court of Appeals then quoted the complete dialogue between respondent and the district judge:

JUDGE MAES: Is that all?

RICHARDS: That's it.

JUDGE: Okay, cross-examination?

SCARBOROUGH: Your honor, I would (inaudible) I don't know if you're gonna hear my motion, so I don't know whether you will need examining.

JUDGE: Well, go ahead, we'll go ahead with your ...

RICHARDS: Your honor, could I object, I, is Mr. Scarborough representing Rodeo Nights? This has been my allegation all the way through, that he's

JUDGE: Mr. Richards, we have a letter and we have an entry of counsel, and we know who counsel is for Rodeo Nights. Mr. Scarborough has a motion for attorney's fees against you for having to attend this um deposition. What he has been asking since we started is that for the court to hear that motion. I told him I was taking it under advisement, now I think we should just go ahead and cut this, is to deal with that motion as well and I'll

allow him direct examination on his motion for attorney's fees.

(Silence)

SCARBOROUGH: (Proceeding to question Richards) Sir, I believe you acknowledged in your opening statement that I had called you on the morning of the 13th and advised you that, or requested of you whether or not the deposition was still on, is that correct?

RICHARDS: Yes.

(Emphasis added.)

The underlined portion of this quote is what Richards omitted from his rehearing memorandum. We agree completely with the Court of Appeals' concluding remarks, that it "expect[s] candor in the memoranda submitted ..." and that respondent's "memorandum failed to meet that standard."

(10) In his defense, respondent has maintained that the deletion of a portion of the quote did not change the meaning, because he intended to object on two grounds: that Scarborough was representing adverse interests in Adair and Rodeo Nites, and that he had not received notice that Adair's motion would be heard at that hearing. Respondent contended that the trial court cut him off before he could articulate the second basis for his objection. This was not, he argued, fatal to his objection, because Rule 1–046 of the Rules of Civil Procedure for the District Courts provides that, to preserve a question for appeal, it is only necessary that the party makes known to the court the objection to the ruling. From this, respondent argues that his redacted quotation showed that the district court knew that he was objecting to Adair's motion being heard, because she referenced Scarborough's request to have Adair's motion heard and stated she was going to hear it.

(11) Respondent is the only person in the world who knows whether he did intend to object on the additional basis that he had not received proper notice that Adair's motion would be heard. What respondent apparently does not understand is that this point is not determinative of whether he made a material misrepresentation to the Court of Appeals. If respondent had recited the entire

discussion he had with Judge Maes, he could have argued to the Court of Appeals (1) that he would have objected on the notice basis had he not been interrupted or (2) that under Rule 1–046, an objection is preserved if the record shows the court understood the basis for the objection, even if it was not articulated by the objecting party. The Court of Appeals, with all relevant information before it, could have decided whether the record supported respondent's version of what objection he was making and whether respondent's interpretation of the requirements for preserving error was correct.

(12) Instead, respondent engaged in a form of advocacy that was deceitful and dishonest. The Court of Appeals was not told that the record failed to reflect an objection on the notice issue, but rather reflected an objection on another topic altogether. Moreover, not only did respondent omit material language, but he also made the affirmative statement that the trial court understood his objection to address the issue of hearing Mr. Adair's motion. As the Court of Appeals noted, respondent achieved this impression by omitting language that showed the objection he actually made.

(13) Certainly a lawyer is expected to make the best argument he or she can to enhance the chance of success. The lawyer's arguments must, however, be based upon the actual state of events, not a distorted version of what occurred. Contrary to respondent's contention, the portion he omitted did change the meaning of the text. If included, there was a very real possibility that the Court of Appeals would find that he had not objected to the motion being heard, but rather had only raised an objection concerning who Scarborough represented. By omitting that portion of the dialogue, respondent attempted to increase the chance that the court would believe he had actually objected to Adair's motion being heard. That is not advocacy; it is deceit.

(14) In a previous disciplinary matter, a lawyer was publicly censured for knowingly making false statements of material fact to a tribunal. *In re Chakeres*, 101 N.M. 684, 687 P.2d 741 (1984). In a brief filed in the Court of Appeals, Chakeres stated that the testimo-ny concerning a particular issue was uncontroverted. In fact, as Chakeres admitted to the hearing committee, the testimony on that issue was inconsistent and his statement was inaccurate. Although respondent, like Chakeres, is receiving a public censure, there is a significant difference between the two cases. Chakeres admitted his wrongdoing; respondent has not.

(15) That respondent refuses to acknowledge his wrongdoing or, even more ominously, does not understand what he did wrong, is a matter of great concern to this Court. If, after multiple levels of disciplinary adjudication, at each of which a lawyer's conduct has been found to violate the Rules of Professional Conduct, the lawyer still has no appreciation for what he has done wrong, the prognosis is not good. Respondent would be well-advised to take whatever steps are necessary to gain an appreciation of what he did wrong if he hopes to avoid further involvement with the disciplinary system.

(16) At the argument before the disciplinary board, respondent asserted that the hearing committee erroneously applied the "preponderance of evidence" standard rather than the "clear and convincing" standard. Respondent and disciplinary counsel agreed that "clear and convincing" was the correct standard, since this case involved allegations of fraudulent conduct. *In re D'Angelo*, 105 N.M. 391, 733 P.2d 360 (1986). In this case, "the record on appeal meets the clear and convincing evidence standard, which *includes* the lesser standard of a preponderance of the evidence...." *Id.* at 393, 733 P.2d at 362.

(17) We therefore adopt the recommendation of the disciplinary board and find that respondent violated Rule 16–303(A)(1), by knowingly making a false statement of material fact to the Court of Appeals, Rule 16–804(C), by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, Rule 16–804(D), by engaging in conduct prejudicial to the administration of justice, and Rule 16–804(H), by engaging in conduct that reflects adversely on his fitness to practice law.

(18) IT IS HEREBY ORDERED that the recommendation hereby is ADOPTED and

Robert Richards shall be and is hereby publicly censured;

(19) IT IS FURTHER ORDERED that respondent shall be assessed all costs of the disciplinary proceeding in the amount of $2,865.94 to be paid on or before October 23, 1997, with any balance remaining thereafter to accrue interest at a rate of 8¾% per annum; and

(20) IT IS FURTHER ORDERED that the disposition of this matter shall have the full force and effect of judgment.

(21) IT IS SO ORDERED.

(22) /s/ Gene E. Franchini
(23) Gene E. Franchini, Chief Justice

(24) /s/ Joseph F. Baca
(25) Joseph F. Baca, Justice

(26) /s/ Pamela B. Minzner
(27) Pamela B. Minzner, Justice

(28) /s/ Patricio M. Serna
(29) Patricio M. Serna, Justice

(30) /s/ Daniel A. McKinnon, III
(31) Daniel A. McKinnon, III, Justice