# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:   2010-NMSC-037

Filing Date: July 13, 2010

Docket No. 32,019

IN THE MATTER OF
CLAUDE DAVID CONVISSER, ESQUIRE

An Attorney Admitted to Practice Before
the Courts of the State of New Mexico

DISCIPLINARY PROCEEDING

Joel L. Widman, Deputy Disciplinary Counsel
Albuquerque, NM

for Petitioner

Claude D. Convisser, pro se
Santa Fe, NM

for Respondent

## OPINION

**PER CURIAM.**

**{1}**     Our Disciplinary Board recommended that attorney Claude Convisser (Respondent) be suspended from the practice of law for engaging in misrepresentations and the unauthorized practice of law in violation of our Rules of Professional Conduct.  Neither Respondent nor disciplinary counsel were satisfied with the Disciplinary Board's recommendation, and both sought review in this Court.  After permitting supplemental briefing by both parties, and at the conclusion of oral argument, we announced our decision from the bench to suspend Respondent from the practice of law for one year, but conditionally deferred the suspension.  We subsequently entered an order memorializing our decision, and both parties filed motions for rehearing that we denied.  We now issue this Opinion to further explain our decision and provide guidance for future cases.

## FACTUAL BACKGROUND

**{2}**     The misconduct at issue in this case arose out of a dispute between Respondent and officers and board members of two organizations in Santa Fe known as EcoVersity and the

1

Prajna Foundation. The founder and benefactor of both organizations was Frances Harwood, who died in 2003. Upon her death, Jeff Harbour was appointed as personal representative of Harwood's estate. Harbour was also a board member and officer of EcoVersity and the Prajna Foundation. Respondent is a former student of EcoVersity.

**{3}** On March 22, 2007, Respondent solicited Harwood's sister as a client to pursue claims against Harbour for his alleged mishandling of the Harwood probate. On April 5, 2007, Harwood's sister sent an email to Respondent declining his offer to represent her. During this time, Respondent was not yet licensed to practice law in New Mexico. Although he did have a license to practice law in Virginia, he was on inactive status at the time.

**{4}** On April 25, 2007, Harbour met with Respondent at Respondent's request. At that meeting, Respondent threatened Harbour with legal action for what he claimed was the mishandling of the Harwood estate. In particular, Respondent claimed that (1) the Harwood estate had not been properly closed, (2) the will could be challenged because it had been procured by Harbour through undue influence, and (3) the statute of limitations had not expired for claims against Harbour as personal representative of the estate. Respondent also represented at the meeting that he had several clients who were prepared to sue Harbour. However, Respondent stated that claims against Harbour would not be pursued if Harbour agreed to relinquish control of EcoVersity and the Prajna Foundation. The following day, Respondent sent Harbour an email threatening a lawsuit, but offering a purported settlement agreement from unidentified claimants. Two weeks later, Respondent sent another email to Harbour's attorney, assuring him that Respondent "faithfully and in good faith presented to Mr. Harbour the claims of at least one client."

**{5}** Later that summer, Respondent sent a letter to the New Mexico Attorney General requesting an investigation and legal action to remove the board members of EcoVersity and the Prajna Foundation. Attached to the letter was a document entitled "Affidavit of Marie Wilkinson," which was unsigned. Although there was a statement at the top of the affidavit indicating that Wilkinson had not reviewed the affidavit, the letter repeatedly cited the purported affidavit as support for the letter's factual allegations. Respondent represented that the purported affidavit contained a summary of statements Wilkinson had made to Respondent during the course of several conversations. However, it came to light during the disciplinary hearing that Wilkinson had never discussed with Respondent his intention to attach the purported affidavit to his letter to the attorney general. It also became clear at the hearing that the purported affidavit contained numerous statements that Wilkinson either did not make or that set forth information of which she had no knowledge.

**{6}** Based on the foregoing, a hearing committee of the Disciplinary Board concluded that Respondent had (1) engaged in the unauthorized practice of law in violation of Rule 16-505(A) NMRA, and (2) engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 16-804(C) NMRA. The hearing committee also recommended that Respondent be indefinitely suspended until he underwent a mental health evaluation to assess his fitness to practice law. Upon review by a panel of the Disciplinary

2

Board, the board panel revised the recommended discipline to a one-year term of suspension followed by six months of supervised probation. During the one-year term of suspension, the board panel recommended that Respondent be required to undergo a mental health evaluation to assess his fitness to practice law and to obtain appropriate counseling if recommended by the evaluating psychologist.

{7}     Respondent was adamantly opposed to the imposition of any discipline against him for a variety of reasons. In contrast, disciplinary counsel believed that the disciplinary panel's recommendation was not severe enough and failed to hold Respondent accountable for the full range of his misconduct. We address Respondent's arguments and discuss why he should be disciplined. In the course of that discussion, when appropriate, we will pause to address disciplinary counsel's arguments and ultimately discuss why we conclude that a deferred suspension is the appropriate sanction for Respondent's misconduct.

## RESPONDENT'S DISCIPLINARY PROCEEDING WAS CONSTITUTIONAL AND AFFORDED HIM DUE PROCESS

{8}     At the outset, we address a number of constitutional challenges that Respondent raises in an effort to question the underlying fairness of his disciplinary proceeding. Respondent's first challenge stems from his request that chief disciplinary counsel conduct an independent review of his case. In response to that request, chief disciplinary counsel sent Respondent a letter informing him that pursuant to Rule 17-307(E) NMRA she had reviewed the file prior to the filing of charges and concluded that there was reasonable cause to believe that Respondent had committed rule violations. She also informed Respondent that she no longer had any authority to intervene in the proceedings because the matter was now before the hearing committee, and noted that Rule 17-307(B) provides that "all doubts shall be resolved in favor of conducting a formal hearing."

{9}     Respondent argues that chief disciplinary counsel's reliance on Rule 17-307(B) violated his right to due process. His argument is twofold. First, Respondent contends that by resolving all doubts in favor of conducting a formal hearing, Rule 17-307(B) "is contrary to the fundamental notion of due process that a person is innocent until proven guilty and not civilly at fault until proven liable." Second, Respondent asserts that Rule 17-307(B) is not being consistently applied. Respondent believes that a consistent application of the rule would either result in formal proceedings on nearly every complaint filed with the Board or else the arbitrary pursuit of only some complaints. We do not find either of Respondent's arguments persuasive.

{10}     Respondent's contention that Rule 17-307(B) presumes his culpability is misguided. As is the case with both criminal and civil proceedings, Rule 17-307(B) provides that in deciding whether a complaint should be dismissed without a formal evidentiary hearing, the facts alleged in the complaint must be taken as true before deciding whether there is reasonable cause to believe that a violation of the Rules of Professional Conduct has occurred. This is no different than the standard imposed in either a criminal or a civil

3

context for motions to dismiss the initiating pleading. *See N.M. Life Ins. Guar. Ass'n v. Quinn & Co.*, 111 N.M. 750, 753, 809 P.2d 1278, 1281 (1991) ("A motion to dismiss tests the legal sufficiency of the complaint. In considering a motion to dismiss for failure to state a claim upon which relief can be granted, we must accept as true all well-pleaded facts and question only whether the plaintiff might prevail under any state of facts provable under the claim."); *State v. Wasson*, 1998-NMCA-087, ¶ 5, 125 N.M. 656, 964 P.2d 820 (recognizing that when considering pretrial motions attacking the sufficiency of an indictment or information, the factual allegations in the State's pleadings are taken as true).

**{11}**     To the extent that Respondent contends that disciplinary counsel is applying Rule 17-307(B) arbitrarily, his argument is based on unsupported conjecture and a misunderstanding of the handling of disciplinary complaints.   First, although Respondent asserts that disciplinary counsel dismisses many more complaints than should be allowable under Rule 17-307(B), his assertion has no support in the record. *See State v. Reynolds*, 111 N.M. 263, 267, 804 P.2d 1082, 1086 (Ct. App. 1990) ("Matters outside the record present no issue for review.").   Moreover, even when Rule 17-307(B) precludes disciplinary counsel from summarily dismissing a complaint, the Rules Governing Discipline still provide for a formal investigation procedure and the possibility of an informal disposition that may avoid the need for the filing of formal charges. *See* Rule 17-307(C) (providing a formal investigation procedure before the filing of formal charges); Rule 17-308 NMRA (giving disciplinary counsel discretion to propose an informal admonition to resolve the matter without the need for a formal hearing).   In short, even if most disciplinary complaints do not result in the filing of formal charges, Respondent wrongly assumes that arbitrary or discriminatory enforcement is the cause.

**{12}**     Respondent next argues that he was the victim of selective prosecution because of his involvement in a petition to convene a grand jury to investigate the operation of EcoVersity. *See* N.M. Const. art. II, § 14 (providing registered voters with the right to petition the district court to convene a grand jury).   We assume without deciding that the affirmative defense of selective prosecution is available to a respondent-attorney in a disciplinary proceeding. *Cf. State v. Estrada*, 2001-NMCA-034, ¶ 12, 130 N.M. 358, 24 P.3d 793 (requiring a defendant in a criminal proceeding who asserts the affirmative defense of selective prosecution to show that (1) "he was singled out for prosecution while others similarly situated have not been prosecuted," and (2) "selection of him for prosecution was invidious or in bad faith and based on intentional, purposeful discrimination stemming from impermissible considerations, such as . . . the exercise of a constitutionally protected right").   However, even if the defense were available, Respondent has failed to establish its prerequisites.

**{13}**     First, Respondent made no showing that other similarly situated attorneys have not been the subject of disciplinary proceedings, while he has.   Second, Respondent's attempt to characterize this disciplinary proceeding as a means to punish him for exercising his right to petition for a grand jury proceeding is a gross distortion of the record.   To justify his claim of selective prosecution, Respondent seizes on an isolated statement in a reviewing officer's

4

report prepared before the filing of formal charges against him. *See* Rule 17-104(B) NMRA ("A reviewing officer, upon request of disciplinary counsel or the chair of the board, shall have the authority and duty to review, approve, modify or disapprove dismissals of complaints docketed for formal investigation and offers of informal admonitions proposed by disciplinary counsel."). In that report, after twelve pages detailing why the reviewing officer believed that Respondent committed misrepresentations and the unauthorized practice of law, the report briefly notes the reviewing officer's concern about Respondent's ongoing efforts to petition for the convening of a grand jury to investigate criminal fraud. Respondent's actions in that regard most concerned the reviewing officer because the reviewing officer thought that Respondent was "trying to carve out a legal role for himself when he does not represent anyone who has any standing to bring these claims." From this single statement, Respondent seeks to portray the entire disciplinary proceeding as flowing from an unlawful intent to deprive him of his constitutional rights. He is simply wrong.

**{14}** The reviewing officer's report describes in detail the factual basis for his conclusion that Respondent engaged in misrepresentations and the unauthorized practice of law. No fair reading of the reviewing officer's report can lead to the conclusion that Respondent was being singled out for exercising his right to petition the district court to convene a grand jury. Rather, the reviewing officer only noted that Respondent's petitioning activity was merely his latest attempt to press claims that he had unsuccessfully solicited others to pursue through civil litigation. The reviewing officer believed that the claims Respondent was trying to raise through a grand jury proceeding were in violation of Rule 16-301 NMRA, which prohibits the bringing of frivolous claims. However, the reviewing officer specifically recommended against bringing a disciplinary proceeding on this basis, believing that a court of law was the appropriate forum for determining either the merit or the frivolousness of the claims Respondent was trying to pursue by means of a grand jury investigation. In short, there is no basis for Respondent's claim that he is the victim of selective prosecution.

**{15}** Respondent also seeks to establish a claim of vindictive prosecution because disciplinary counsel initially recommended dismissing the complaint against him, but then pursued disbarment after the reviewing officer disapproved dismissing the complaint. *Cf. State v. Brule*, 1999-NMSC-026, ¶ 10, 127 N.M. 368, 981 P.2d 782 (discussing the defense of vindictive prosecution within the context of criminal prosecutions). As with Respondent's claim of selective prosecution, we assume without deciding that the defense of vindictive prosecution may be available to a respondent in an attorney discipline proceeding. Nevertheless, Respondent has failed to establish that vindictive prosecution was at work in this case.

**{16}** Respondent's basis for presuming vindictive prosecution is that disciplinary counsel ultimately sought his disbarment after first proposing to dismiss the complaint. However, as touched on above, whenever disciplinary counsel wants to summarily dismiss a complaint, the review and concurrence of a reviewing officer must be obtained. *See* Rule 17-105(B)(3)(a) NMRA (providing that the "dismissal of a complaint that has been docketed for formal investigation is effective only after review and concurrence by a reviewing

5

officer"); Rule 17-104(B) (giving a reviewing officer "the authority and duty to review, approve, modify or disapprove dismissals of complaints docketed for formal investigation"). Under our Rules Governing Discipline, if a reviewing officer determines that a complaint should not be dismissed, disciplinary counsel has no choice but to pursue the case. Thus, the fact that disciplinary counsel sought the most severe possible sanction does not demonstrate even a prima facie showing of vindictiveness, much less require disciplinary counsel to offer an explanation in rebuttal. *Cf. Brule*, 1999-NMSC-026, ¶ 11 ("By itself, the District Attorney's decision to pursue felony charges in district court after filing a nolle prosequi on the initial misdemeanor charges does not suggest a likelihood of vindictiveness.").

**THE CORRECT STANDARD OF PROOF WAS APPLIED IN THIS CASE**

**{17}**     Because the hearing committee expressly stated that all of its findings were supported by a preponderance of the evidence, Respondent argues that this Court should impose a higher standard of clear and convincing evidence and dismiss the charges. Though this Court has previously ruled that the preponderance of the evidence standard of proof is to be used for most ethical rule violations, Respondent asks us to reconsider the matter. We decline to do so and reaffirm this Court's long-standing ruling that the preponderance of the evidence standard is the appropriate standard of proof for most alleged ethical rule violations. *See In re D'Angelo*, 105 N.M. 391, 393, 733 P.2d 360, 362 (1986) (per curiam) (discussing the reasons for applying the preponderance of the evidence standard for most alleged ethical violations in attorney disciplinary proceedings).

**{18}**     Respondent correctly notes that the higher standard of clear and convincing evidence is still applied to ethical rule violations involving fraud. *Id.* at 393, 733 P.2d at 362. In this regard, Respondent points out that he was charged with violating Rule 16-804(C), which prohibits engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation." Because the hearing committee found that Respondent committed several violations of Rule 16-804(C) based on a preponderance of the evidence, Respondent argues that those findings cannot stand. We disagree.

**{19}**     While charges of fraud must always be proven by clear and convincing evidence, that higher standard of proof does not always apply to alleged ethical misconduct involving misrepresentations. In an ordinary civil case, allegations of negligent misrepresentation need only be proven by a preponderance of the evidence, while intentional misrepresentations must be proven by clear and convincing evidence. *See, e.g., State ex rel. Conley Lott Nichols Mach. Co. v. Safeco Ins. Co. Of Am.*, 100 N.M. 440, 443, 671 P.2d 1151, 1154 (Ct. App. 1983). However, the negligent/intentional dichotomy used in civil cases does not transfer well into the context of an attorney discipline case. *See In re Bristol*, 2006-NMSC-041, ¶¶ 11-12, 19, 23, 29, 140 N.M. 317, 142 P.3d 905 (per curiam) (noting that a violation of Rule 16-804(C) cannot be premised on negligent conduct and ruling that the hearing panel overstepped its reviewing authority by finding contrary to the hearing committee that the attorney engaged in intentional misrepresentations). Instead, when a violation of Rule 16-

6

804(C) is premised on conduct that is characterized as a misrepresentation, the conduct must be intentional. That said, not all allegations of intentional misrepresentation must be proven by clear and convincing evidence.

**{20}** The critical inquiry is whether the attorney's conduct was driven by an improper motive or intent. *See In re Yalkut*, 2008-NMSC-009, ¶ 25, 143 N.M. 387, 176 P.3d 1119 (per curiam) (providing that an ethical violation premised on the misappropriation of client funds requires a dishonest motive and cannot be based on negligent conduct); *see also In re Obert*, 89 P.3d 1173, 1177-78 (Or. 2004) (en banc) (recognizing that a misrepresentation need not be driven by an improper motive and does not require an intent to commit fraud). Thus, if an attorney is accused of engaging in misrepresentations with fraudulent intent, such allegations must be proven by clear and convincing evidence in the same way that other rule violations involving fraud must be proven. However, if an attorney is accused of engaging in intentional misrepresentations without fraudulent intent, such allegations need only be proven by a preponderance of the evidence, as is the case with most other ethical rule violations. Because the hearing committee expressly found that Respondent did not exhibit a selfish motive or seek to profit personally from his conduct, we therefore conclude that the allegations that he engaged in misrepresentations in violation of Rule 16-804(C) only needed to be proven by a preponderance of the evidence.

## RESPONDENT FAILED TO ESTABLISH THE EXISTENCE OF EX PARTE COMMUNICATIONS, BUT HE IS NOT REQUIRED TO UNDERGO A MENTAL HEALTH EXAMINATION

**{21}** Respondent contends that he was the victim of ex parte communications between disciplinary counsel and the hearing committee. However, Respondent can point to nothing in the record to support this allegation. Instead, to support his claim, Respondent focuses on the hearing committee's recommendation that he undergo a mental health examination. Respondent contends that there is nothing in the record to support the hearing committee's recommendation, and Respondent therefore speculates that disciplinary counsel must have engaged in ex parte communications with the hearing committee to disparage his mental health. Respondent's speculation finds no support in the record and ignores a statement in the hearing committee's recommendation indicating that it was Respondent's own interactions with the hearing committee that prompted its recommendation that he undergo a mental health examination.

**{22}** While it was Respondent's behavior before the hearing committee and not ex parte communications that apparently motivated the committee's recommendation for a mental health examination, as we noted after oral argument in this case, both the hearing committee and the hearing panel lacked the authority to condition Respondent's suspension on his submitting to a mental health examination. Although the hearing committee characterized Respondent's behavior as "bizarre and peculiar," the only specific example of this type of behavior cited by the hearing committee was Respondent's failure to obey the chairman's order that Respondent file no further pleadings unless the committee requested that he do so.

Respondent's disobedience may have been cause for asking this Court to hold him in contempt, *see* Rule 17-306(D)(1) NMRA, but we conclude that his disobedience is an inadequate basis for ordering a mental health examination, particularly when such a recommended sanction is not explicitly authorized by our Rules Governing Discipline. *See* Rule 17-206 NMRA (listing types of discipline); *see also* Rule 17-208(B) NMRA (permitting the Disciplinary Board to petition the Supreme Court for an order requiring an examination to determine whether an attorney is incapacitated). For that reason, we do not require Respondent to submit to a mental health examination as part of his discipline. That said, we find nothing in the record to support Respondent's claim that ex parte communications played any part in the recommendation that he undergo a mental health examination.

## RESPONDENT'S CLAIMS OF PROSECUTORIAL MISCONDUCT ARE UNFOUNDED

**{23}**  Respondent also asserts that the disciplinary proceedings against him should be dismissed because of prosecutorial misconduct that was "pervasive, incessant, and outrageous." To support his argument, Respondent relies on *In re Stein*, 2008-NMSC-013, 143 N.M. 462, 177 P.3d 513 (per curiam). Although we discussed and rejected claims of prosecutorial misconduct in *Stein*, we also questioned the applicability of the criminal law concept of prosecutorial misconduct within the context of an attorney disciplinary proceeding. *Id.* at ¶ 54. We continue to have reservations about the use of this concept outside the criminal law arena. *See Cohen v. State Bd. of Med.*, 676 A.2d 1277, 1280 (Pa. 1996) (finding the criminal concept of prosecutorial misconduct inapplicable to administrative disciplinary proceedings); *see also In re Oxman*, 437 A.2d 1169, 1173 n.11 (Pa. 1981). As in *Stein*, we need not definitively decide its applicability because Respondent has failed to establish the kind of "pervasive, incessant, and outrageous" conduct the concept was intended to remedy. *See State v. Breit*, 1996-NMSC-067, ¶ 37, 122 N.M. 655, 930 P.2d 792.

**{24}**  For the most part, Respondent's claim of prosecutorial misconduct is based on claims that disciplinary counsel misused the discovery process. example, Respondent claims that disciplinary counsel concealed potentially exculpatory documents, suborned a false affidavit, misrepresented communications that disciplinary counsel had with Respondent, coached witnesses during discovery, and failed to provide Respondent with copies of subpoenas disciplinary counsel issued for witnesses he planned to call at the hearing. However, Respondent's claims in this regard are based on factual disputes that the hearing committee resolved against him when denying his motions to dismiss. While Respondent also claims that disciplinary counsel misrepresented to the hearing panel the nature of the admonishment disciplinary counsel received in *Stein*, the hearing panel could review our opinion in *Stein* and judge for itself whether disciplinary counsel was being forthright with the committee. Because Respondent's claims of prosecutorial misconduct depend on factual determinations that were resolved against him, we will not substitute our judgment for that of the hearing committee on questions of fact. *See Bristol*, 2006-NMSC-041, ¶ 15 ("Because the hearing

committee directly observes witness testimony, it is in the best position to weigh the evidence, resolve matters of credibility, and choose between the conflicting inferences that may be drawn from the evidence."). Moreover, other than general assertions of prejudice, Respondent failed to specifically demonstrate how any of disciplinary counsel's purported misconduct prejudiced Respondent's defense or would result in a different outcome if rectified. *See In re Castellano*, 119 N.M. 140, 144, 889 P.2d 175, 179 (1995) (per curiam) (holding that an assertion of prejudice is not a showing of prejudice). For all of the foregoing reasons, we reject Respondent's claim of prosecutorial misconduct.

## RESPONDENT RECEIVED ADEQUATE NOTICE OF THE CHARGES

**{25}** Respondent objects to a number of findings the hearing committee made because they concerned matters that were not set forth in the formal specification of charges. The specification of charges must contain "a brief and plain statement of the charge, or if more than one, each of the separate charges of professional misconduct asserted against the respondent-attorney." *See* Rule 17-309(B)(1) NMRA. Respondent does not deny that the specification of charges included each of the specific rule violations that the hearing committee ultimately found he had committed. Respondent also concedes that the findings to which he objects were not relied upon by the hearing committee for its conclusions that he engaged in misrepresentations and the unauthorized practice of law. As such, Respondent has failed to demonstrate prejudice because he received all the notice to which he was due.

## RESPONDENT WAS NOT DEPRIVED OF THE RIGHTS TO DISCOVERY OR TO CONFRONT AND CROSS-EXAMINE THE WITNESSES AGAINST HIM

**{26}** Respondent contends that the hearing committee improperly limited discovery and his right to confront and cross-examine witnesses. To the extent Respondent contends that the hearing committee erred in denying his requests to propound interrogatories, requests for admissions, and requests for the issuance of subpoenas duces tecum, Respondent has failed to explain how he was prejudiced by those limitations. *See Castellano*, 119 N.M. at 144, 889 P.2d at 179. As a result, we will not consider that issue further.

**{27}** To the extent Respondent contends that the hearing committee improperly restricted the matters into which he could inquire during depositions, we note that throughout these proceedings Respondent sought to uncover what he perceived to be the mishandling of the Harwood probate and the operation of EcoVersity. However, as the hearing committee correctly observed, even if he honestly believed he had valid concerns about the way that the Harwood probate was handled and how that may have impacted EcoVersity's operation, those concerns are not relevant to whether Respondent engaged in misrepresentations or the unauthorized practice of law. Even if Respondent's concerns were valid, a matter on which we express no opinion, such concerns would not justify violating our Rules of Professional Conduct. Accordingly, we conclude that the hearing committee had good cause to limit the manner in which Respondent could conduct his discovery. *See* Rule 17-311 NMRA ("Upon a showing of good cause, the chair may permit discovery upon such terms as may be

9

appropriate under the circumstances.").

## RESPONDENT IS NOT BEING DISCIPLINED FOR NEGLIGENT MISREPRESENTATIONS

**{28}** Respondent maintains that he is being inappropriately sanctioned for making negligent misrepresentations to both Harbour and the attorney general. Respondent focuses on the hearing committee's findings that he should have known that the statute of limitations had expired on any claims against Harbour as personal representative of the Harwood estate. However, Respondent misconstrues the import of these findings.

**{29}** Respondent is not being disciplined for misunderstanding the application of the relevant statutes of limitations that may or may not have applied to any claims that could have been brought against the personal representative of the Harwood estate. Instead, as we understand the findings, the hearing committee believed that Respondent knew that the relevant statute of limitations had expired, but that he intentionally misrepresented that the limitations period had not expired in his efforts to intimidate Harbour into relinquishing control of EcoVersity and to spur the attorney general to initiate an investigation into EcoVersity's operation. As such, the hearing committee recommended discipline for intentional misrepresentations, not negligent ones. Though the hearing committee found that Respondent should have known the state of the law, that finding was coupled with a finding that Respondent had spent a great deal of time reviewing the probate file. In addition, the hearing committee noted that neither Respondent nor any of his purported clients had ever brought a civil action against Harbour. Under these circumstances, the hearing committee's findings only can be viewed as rejecting Respondent's claims of ignorance and mistake. *See Bristol*, 2006-NMSC-041, ¶ 16 (providing that the hearing committee's findings should be viewed in the light most favorable to its decision). Viewing the hearing committee's findings in that light, Respondent's contention that he is being erroneously sanctioned for making negligent misrepresentations misconstrues the findings made against him.

## SUBSTANTIAL EVIDENCE SUPPORTS THE HEARING COMMITTEE'S CONCLUSION THAT RESPONDENT SHOULD BE DISCIPLINED FOR ENGAGING IN MISREPRESENTATIONS AND THE UNAUTHORIZED PRACTICE OF LAW

**{30}** As noted at the outset, the hearing committee concluded that Respondent violated Rule 16-804(C) by engaging in misrepresentations and Rule 16-505(A) NMRA by engaging in the unauthorized practice of law. Before proceeding to discuss why we conclude there is substantial evidence to support the hearing committee's decision on those points, we first take note of disciplinary counsel's contention that the hearing committee erred by refusing to also find that Respondent violated two other Rules of Professional Conduct. Disciplinary counsel first notes that although the hearing committee believed that Respondent's conduct demonstrated that he was unfit to practice law, the hearing committee declined to find a violation of Rule 16-804(H) because that portion of the rule had been repealed by the time

of the hearing. Disciplinary counsel further notes that while the hearing committee also found that Respondent asserted unfounded claims and contentions against Harbour, the committee declined to find a violation of Rule 16-301 because Respondent did not assert those claims and contentions within a proceeding.

**{31}** We appreciate disciplinary counsel's position that Respondent should be held accountable for violating an ethical rule that was in effect at the time he committed his misconduct. We also appreciate the need to protect the public from attorneys who pursue unfounded claims. However, we decline to disturb the hearing committee's decision for two reasons.

**{32}** Regarding the now-repealed provision in Rule 16-804(H), although the hearing committee did indeed find that Respondent demonstrated his lack of fitness to practice law, that finding was essentially premised on the same conduct that formed the basis for his violations of the other rules for which discipline was recommended. As such, piling on another rule violation that is only a more general means to condemn misconduct that specifically violated other rules would add little to the outcome of this proceeding. In our view, even if we were inclined to hold Respondent accountable for violating the now-repealed Rule 16-804(H), the ultimate sanction we would impose against him would be unchanged. Accordingly, we need not decide whether a sanction should be imposed for misconduct that violated a previously-existing rule which was later repealed before the enforcement proceeding commenced. *Cf. In re Estate of Heeter,* 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct. App. 1992) ("On appeal, error will not be corrected if it will not change the result."). If the question arises in another context that is more compelling, we will revisit the issue at that time.

**{33}** Disciplinary counsel's desire to hold Respondent accountable for pursuing unfounded claims in violation of Rule 16-301 raises similar concerns for us. Rule 16-301 specifically prohibits bringing frivolous claims in a proceeding. Disciplinary counsel advocates expanding the rule to encompass threats to bring an unfounded claim in a future proceeding. Even assuming that it may be appropriate to expand the application of Rule 16-301 in that way, we decline to do so in this case because again we foresee no change in the ultimate sanction imposed on Respondent.

**{34}** We now turn our attention to the rule violations for which the hearing committee and hearing panel did recommend imposing discipline. The hearing committee found three separate violations to Rule 16-804(C) based on Respondent's misrepresentations regarding (1) whether the applicable statute of limitations had expired, (2) whether Respondent actually represented any clients who wanted to sue Harbour, and (3) whether the purported Wilkinson affidavit was inaccurate. The hearing committee found two violations of Rule 16-505(A) based on (1) Respondent's unsuccessful solicitation of Harwood's sister as a client, and (2) his assertion to Harbour that the statute of limitations had not yet run on claims Respondent threatened to bring against Harbour for breach of his fiduciary duty as personal representative of the Harwood estate. Notwithstanding Respondent's arguments

11

to the contrary, for the reasons that follow, we determine that the hearing committee's findings are supported by substantial evidence. *See Bristol*, 2006-NMSC-041, ¶¶ 16-18 (providing that the findings of the hearing committee are reviewed for substantial evidence).

**{35}** As we discussed earlier in this Opinion, the hearing committee found that Respondent engaged in intentional misrepresentations, but that he did so without a selfish motive. Regarding the hearing committee's conclusion that Respondent violated Rule 16-804(C) during his meeting with Harbour, the committee could reasonably view the evidence as establishing that Respondent knew that the statute of limitations had expired, but intentionally misled Harbour into believing it had not in an effort to persuade him to relinquish control of EcoVersity. *See Bristol*, 2006-NMSC-041, ¶ 16 (noting that all reasonable inferences from the evidence are made in support of the decision of the hearing committee). Similarly, Respondent's same misrepresentations to the attorney general could be reasonably viewed as intended to spur an investigation into EcoVersity's operation.

**{36}** We recognize that Respondent contends his statements to Harbour were based on a misunderstanding of the law. However, we again note that the hearing committee specifically found that Respondent thoroughly reviewed the probate file before meeting with Harbour and sending his letter to the attorney general. also again note the hearing committee's finding that neither Respondent nor any of his purported clients ever brought a civil action against Harbour. As such, the hearing committee could reasonably reject Respondent's claim of ignorance regarding the true state of the law and instead could reasonably infer that Respondent knew the statute of limitations had expired but engaged in misrepresentations to achieve his goals without pursuing civil litigation that he knew would be time-barred. We will not second-guess the hearing committee on such fact-intensive questions of credibility and motive. *See Bristol*, 2006-NMSC-041, ¶ 15 (requiring deference to the hearing committee on matters of weight and credibility).

**{37}** Regarding Respondent's statements to Harbour indicating he represented clients with standing and interest to reopen the Harwood estate and sue Harbour, we conclude that there was substantial evidence to support the hearing committee's conclusion that Respondent violated Rule 16-804(C). We recognize that Respondent claimed he was in the midst of ongoing discussions with Harwood's sister and others regarding whether they wanted Respondent to represent them in a lawsuit. However, the hearing committee was free to reject the evidence Respondent offered in support of his claim. *See Bristol*, 2006-NMSC-041, ¶¶ 15, 26. In this regard, we note the hearing committee's finding that Harwood's sister refused to sign the attorney representation agreement that Respondent sent to her well before he met with Harbour. We also again take note of the hearing committee's finding that Respondent never filed any type of civil action against Harbour on behalf of anyone. In short, because Respondent failed to establish the existence of any attorney-client relationship, the hearing committee could reasonably infer that he simply misrepresented the existence of clients in his effort to intimidate Harbour into relinquishing control of EcoVersity. *Id.* ¶¶ 16, 17.

**{38}** As for the purported affidavit claiming to memorialize a series of conversations between Respondent and Wilkinson, we conclude that there was substantial evidence to support the hearing committee's conclusion that the purported affidavit violated Rule 16-804(C). In attempting to rebut any suggestion that the affidavit was intended to be a misrepresentation, Respondent relies heavily on the fact that he disclosed in his letter to the attorney general that the purported affidavit had not been signed or reviewed by Wilkinson. Aside from that disclosure, he nevertheless represented to the attorney general that it accurately summarized Wilkinson's statements to Respondent during several conversations between them and repeatedly cited the purported affidavit in support of the factual allegations he made in his letter. Wilkinson denied the accuracy of most of what was set forth in the purported affidavit and was not aware that Respondent was considering submitting such a document to the attorney general. Under these circumstances, the hearing committee could reasonably infer that Respondent intended to mislead the attorney general into believing that the purported affidavit was an accurate, albeit unsigned and unreviewed, statement of Wilkinson's belief. *See Bristol*, 2006-NMSC-041, ¶¶ 16, 17.

**{39}** Regarding the hearing committee's conclusion that Respondent engaged in the unauthorized practice of law in violation of Rule 16-505(A), Respondent does not dispute that he solicited Harwood's sister to retain him to pursue a lawsuit against Harbour, nor does he dispute that he advised Harbour that the statute of limitations had not expired for claims against him as the personal representative of the Harwood estate. Moreover, Respondent does not question whether his conduct constitutes the practice of law. Instead, Respondent contends that his attempts to solicit a client and give legal advice were exempt from disciplinary sanctions because he was actually permitted to take those actions under exceptions set forth in Rule 16-505(E), which Respondent characterizes as "safe harbors" from the general prohibition against the unauthorized practice of law. For the reasons that follow, we conclude that the hearing committee was entitled to reject Respondent's asserted defenses.

**{40}** While Rule 16-505(A) prohibits the unauthorized practice of law by attorneys who are not licensed in New Mexico, the rule as a whole does provide some limited exceptions for attorneys who are admitted to practice in another state. Respondent seeks to claim two of those exceptions. *See* Rule 16-505(E)(1) & (2) (permitting a lawyer admitted in another state and not suspended from practice to provide legal services in New Mexico on a temporary basis if the lawyer associates with local counsel who actively participates in the matter or if the lawyer reasonably expects to be authorized to practice in this state). However, at the time that Respondent solicited Harwood's sister to be a client, Respondent was still on inactive status in Virginia. Even though he anticipated being returned to active status, he was still inactive. As such, we conclude that Respondent could not rely on the exceptions to the prohibition against the unauthorized practice of law. *See* Rule 16-505 cmt. 7 (noting that an attorney on inactive status is not considered admitted for purposes of the exceptions permitting temporary legal services). Perhaps if Respondent had already been on active status in Virginia, the securing of local co-counsel or his anticipated admission to the New Mexico bar would have permitted his actions. The record also reflects that

Respondent had not secured local counsel. Although he spoke with a local attorney about a possible future lawsuit, at the time he did so, local counsel whom he had contacted understood that he did not yet have a client.

**{41}** We recognize that by the time he met with Harbour, Respondent had apparently just learned that his Virginia license had been reactivated and that he had passed the New Mexico bar exam. However, Respondent's reliance on his newly-reactivated Virginia license coupled with his expectation that he would soon be admitted to the New Mexico bar strains the exceptions in Rule 16-505(E) to their breaking point. Moving from inactive to active status to practice law is not simply an empty formality, nor is the initial admission to practice law. If those formalities are to have any meaning, a lawyer must refrain from practicing law until he or she is clearly authorized to do so. We therefore conclude that substantial evidence supported the hearing committee's conclusion that Respondent engaged in the unauthorized practice of law.

## A DEFERRED PERIOD OF SUSPENSION IS THE APPROPRIATE DISCIPLINARY SANCTION UNDER THE CIRCUMSTANCES OF THIS CASE

**{42}** As noted above, although the hearing committee recommended that Respondent undergo an indefinite suspension until he submitted to a mental health examination, the hearing panel disagreed with that recommendation and instead recommended a one-year suspension during which Respondent would submit to a mental health examination and counseling, if recommended, followed by a six-month probationary period. The disagreement between the hearing committee and the hearing panel notwithstanding, we independently determine the appropriate level of sanction to impose for Respondent's misconduct. *See Bristol*, 2006-NMSC-041, ¶¶ 18, 30. In so doing, the *ABA Standards for Imposing Lawyer Sanctions* (1992) provide us with guidance. *See In re Key*, 2005-NMSC-014, ¶ 5, 137 N.M. 517, 113 P.3d 340.

**{43}** Because Respondent engaged in conduct involving intentional misrepresentations and the unauthorized practice of law, Standards 5.1 and 7.0 of the *ABA Standards* provide the most direct guidance for this case. Standard 5.1 provides guidance for imposing sanctions for failure to maintain personal integrity, and, specific to this case, conduct involving dishonesty, fraud, deceit, or misrepresentation directed at someone other than a client or tribunal. Under Standard 5.13, a reprimand is generally considered appropriate when a lawyer knowingly engages in non-criminal conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his or her fitness to practice law.

**{44}** Regarding the unauthorized practice of law, Standard 7.2 provides that a suspension is generally considered appropriate when the lawyer knowingly engages in such conduct and causes injury or potential injury to a client, the public, or the legal system. In contrast, if the attorney negligently engages in the unauthorized practice of law but causes little or no actual or potential injury, then a reprimand or admonition is generally considered appropriate. *See* Standards 7.3 and 7.4.

14

**{45}** Based on the foregoing standards, we hold that a reprimand and suspension are the most appropriate response for the totality of Respondent's misconduct. We note, however, that Standard 9.0 contemplates increasing or decreasing a sanction's severity based on any aggravating or mitigating circumstances in the case. As we have previously noted, the hearing committee found that Respondent acted without a selfish motive, which is a potential mitigating factor under Standard 9.32(b). However, the hearing committee also found that Respondent "has a total lack of understanding of his conduct and the consequences of his actions," a finding with which we agree and which has ample support in the record. *See* Standard 9.22(g) (providing that an aggravating circumstance includes a lawyer's refusal to acknowledge the wrongful nature of his conduct).

**{46}** We note that while the hearing committee declined to find a pattern of misconduct as an aggravating circumstance in this case because Respondent's misconduct had a single purpose, disciplinary counsel nevertheless asks that we consider Respondent's repeated misrepresentations as a pattern of conduct constituting an aggravating factor under Standard 9.22(c). Without foreclosing the possibility that a pattern of conduct could be found to exist where an attorney engages in repeated misconduct for a single purpose, we decline to overturn the hearing committee's decision on this point based on the unique circumstances of this case.

**CONCLUSION**

**{47}** In sum, because there are factors both in aggravation and in mitigation of Respondent's offenses, and because Respondent's offenses otherwise warrant a reprimand and suspension under the *ABA Standards* cited above, a one-year suspension and public reprimand by means of this Opinion are the appropriate sanction for Respondent's misconduct. We note, however, that the misconduct at issue in this case took place shortly before and after Respondent was admitted to practice law in this state. Accordingly, we deem it appropriate to exercise our discretion to defer the period of suspension on the condition that Respondent engage in no further ethical misconduct in violation of our Rules of Professional Conduct and Rules Governing Discipline. We recognize that disciplinary counsel continues to believe that disbarment is the appropriate sanction in this case. However, without minimizing the seriousness of Respondent's misconduct, we cannot agree that disbarment would be an appropriate response at this time.

**{48}** As noted before, although Respondent appears to be unwilling or unable to understand the nature of his misconduct, there is no indication that he was acting with a selfish motive or desire to secure a private benefit for himself. Because all of Respondent's misconduct centered around his single-minded purpose of righting what he perceived to be a wrong committed against EcoVersity, we hope that Respondent's penchant for misrepresenting facts to suit his purposes and stretching the interpretation of our ethical rules to their breaking point will not repeat itself in other contexts. Therefore, as previously ordered by this Court, Respondent's one-year suspension from the practice of law is deferred. However, if Respondent fails to engage in meaningful self-examination and

15

continues to engage in unethical conduct in another context, we will not hesitate to revisit the need for a more severe sanction to protect both the public and our legal system.

**{49}  IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *In re Convisser*, Docket No. 32,019**

| AT | ATTORNEYS |
|---|---|
| AT-DA | Disciplinary Action |
| AT-PR | Professional Responsibility |
| AT-UP | Unauthorized Practice |

| CT | CONSTITUTIONAL LAW |
|---|---|
| CT-MS | Misconduct by Prosecutor |
| CT-RF | Right to Confrontation |