IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2013-NMSC-039

Filing Date:  August 15, 2013

Docket No. 33,362

IN RE RESCUE ECOVERSITY PETITION

CLAUDE D. CONVISSER,

      Petitioner-Respondent,

v.

ECOVERSITY, PRAJNA FOUNDATION,
and JEFFREY HARBOUR,

      Respondents-Petitioners.

ORIGINAL PROCEEDING ON CERTIORARI
Michael Eugene Vigil, District Judge

Montgomery & Andrews, P.A.
Walter J. Melendres
Victor R. Ortega
Andrew S. Montgomery
Seth C. McMillan
Santa Fe, NM

for Petitioners

Claude David Convisser
Santa Fe, NM

for Respondent

## OPINION

**DANIELS, Justice.**

**{1}**    Article II, Section 14 of the New Mexico Constitution provides that, in addition to other permissible methods for convening a criminal grand jury, "a grand jury shall be

ordered to convene by [a district] judge upon the filing of a petition therefor signed by not less than the greater of two hundred registered voters or two percent of the registered voters of the county . . . ." We hold that determining whether a grand jury petition is supported by the requisite number of "registered voters" is a judicial function calling for the exercise of judicial discretion and that the district court did not abuse its discretion in this case by rejecting a grand jury petition whose signatories were not confirmed to be registered voters.

## I.    BACKGROUND

**{2}**    In July 2009, attorney Claude Convisser filed a petition with the First Judicial District Court to initiate[1] a Santa Fe County grand jury proceeding. Convisser's petition sought an investigation of a "suspicion of criminal fraud" in connection with the activities of "[Jeffrey] Harbour and his cohorts" in procuring a will from Frances Harwood shortly before her death in 2003 that gave Harbour control of Harwood's two nonprofit organizations, EcoVersity and Prajna Foundation. Convisser sought to compel a grand jury investigation through a citizens' petition after the New Mexico Attorney General and the Santa Fe District Attorney separately declined Convisser's requests to pursue the matter. The underlying controversy, which is not directly relevant to the issue in this appeal, is discussed more fully in Convisser's related attorney disciplinary proceeding. *See In re Convisser*, 2010-NMSC-037, 148 N.M. 732, 242 P.3d 299.

**{3}**    When Convisser filed his grand jury petition in district court, he included the affidavit of the Santa Fe County Clerk, whom he asked to verify that his petition signatories were Santa Fe County registered voters. In her affidavit, the County Clerk stated (1) that Convisser needed the signatures of 1770 registered voters in order to meet the constitutional requirement and (2) that of the signatures Convisser submitted, the names of 1808 (sixty-eight percent of the 2658 submitted signatures) were the same as names of people who appeared on Santa Fe County's voter registration rolls; but (3) the County Clerk could not verify that any of the petition's signatories were actually registered voters, primarily because the petition failed to include the signatories' addresses, which the County Clerk could use to confirm whether the signatories were registered to vote in Santa Fe County.

**{4}**    Before ruling on whether Convisser's petition satisfied the requirements of Article II, Section 14, the district court issued an order permitting responses from "Santa Fe County and other interested parties." The joint response of Harbour, EcoVersity, and Prajna Foundation argued that Convisser's petition did not meet the requirements of Article II, Section 14 because (1) the County Clerk could not verify its signatories as registered voters, (2) simply comparing signatory names to names of registered voters did not verify that the

---

[1]Although caselaw and the proceedings in this case often refer to "convening a grand jury" by petition, this Court clarified in *Cook v. Smith*, 1992-NMSC-041, ¶ 18, 114 N.M. 41, 834 P.2d 418, that Article II, Section 14 is satisfied by submitting the subject matter of the petition to an already-convened grand jury without the need to convene an additional one.

signatories were in fact the registered voters of the same name, as illustrated by affidavits of Santa Fe County registered voters whose names matched those on Convisser's petition but who swore that they had not signed his petition, and (3) numerous signatures were the result of fraud and misrepresentation, an allegation supported by affidavits, letters, and emails attached to the joint filing.

**{5}** Santa Fe County also filed a response, arguing that the petition failed to establish compliance with the requirements of Article II, Section 14 because the County Clerk was unable to verify by "an address or some other reliable way" that the signatories were registered voters. The County's response noted that before circulating his petition Convisser did not consult with the County Clerk to determine what information the Clerk needed in order to verify whether she could confirm a signatory as a registered voter.

**{6}** In addition to soliciting and considering the written submissions, the district court scheduled a hearing to allow all interested parties to be heard. Following the hearing, the district court issued an order denying Convisser's petition, finding that "the petition signers did not provide sufficient information to determine if any signer is a qualified voter in Santa Fe County."

**{7}** The Court of Appeals reversed the district court on the theory that the district court's ruling impermissibly added a signatory address requirement to Article II, Section 14. *See In re Rescue EcoVersity Petition*, 2012-NMCA-008, ¶ 8, 270 P.3d 104 ("We will not read language which is not there into the Constitution in order to require petitioners to include addresses of signatories in their petition.").

**{8}** After first holding that "[o]nce the County Clerk determines that the requisite number of persons purporting to be registered voters in the county have provided their names and signatures, and those names correspond to names of registered voters within the county, the Constitution has been satisfied," *id.* ¶ 4, the Court of Appeals went on to create a new, three-step burden-shifting procedure for grand jury petitions. First, the petitioners would have an initial burden of production, showing that a sufficient number of names of petition signatories facially match the names of registered voters within the county; once petitioners carry that initial burden, the district court would be without discretion to deny the petition unless an opponent of the petition then satisfies a burden of producing "evidence demonstrating that the signatures on the petition are not those of registered voters within the county"; and finally, if an opponent were to satisfy that burden of production, the petitioner would then bear the burden of persuading the district court that the constitutional requirement is met. *Id.* ¶ 11.

**{9}** Applying its new procedure, the Court of Appeals concluded that petition opponents in this case had not carried their burden of producing sufficient evidence to show that the petition signatures were not those of registered voters and that the district court therefore abused its discretion in determining that Convisser had not met his constitutional burden of establishing compliance with Article II, Section 14. *Id.* ¶ 14.

3

**{10}** We granted certiorari to determine the precedential issues of constitutional interpretation that this case presents.

## II.     DISCUSSION

### A.     The District Court Has the Judicial Responsibility to Determine That a Voter Petition Meets Constitutional Requirements

**{11}** Although this Court has not previously considered the precise manner in which a district court must determine whether a voter-initiated grand jury petition meets the constitutional requirement that it be signed by the requisite number of "registered voters of the county," we have addressed other issues relating to the sufficiency of grand jury petitions. *See Pino v. Rich*, 1994-NMSC-105, ¶ 3, 118 N.M. 426, 882 P.2d 17 (A "district court judge must determine the legality of a petition to convene a grand jury by deciding whether 'the petition on its face delimit[s] an area of inquiry that colorably lies within the permissible scope of grand jury inquiry.'" (alteration in original) (citation omitted)); *Dist. Court of Second Judicial Dist. v. McKenna*, 1994-NMSC-102, ¶¶ 14-15, 118 N.M. 402, 881 P.2d 1387 ("As part of its 'residuum of supervisory authority,' the reviewing court may consider matters beyond the face of the petition if necessary to determine the petition's legal validity," including holding an evidentiary hearing. (citation omitted)); *Cook v. Smith*, 1992-NMSC-041, ¶¶ 6, 12, 114 N.M. 41, 834 P.2d 418 ("[W]e think it clear that the judge must make a legal, nondiscretionary determination that the inquiry proposed by the petition is valid."). While these cases focus on the validity of the petition's inquiry, this Court specifically explained in *Cook* that "the sole issue committed to the discretion of the [district] court appears to be verification that the petition meets the constitutional conditions, namely whether the petition contains the requisite number of signatures and *whether the signatories are registered voters of the county*." *Cook*, 1992-NMSC-041, ¶¶ 5-6 (emphasis added).

**{12}** We clarify that the issue here is not whether any further constitutional requirements can be added to the text of Article II, Section 14 that grand jury petitions be signed by the requisite number of "registered voters of the county"; instead, the issue is whether the district court acted within its lawful discretion in determining that the petitioners had not shown that they met that constitutional requirement. Although we agree with the view of the Court of Appeals that our courts are not free to add requirements to those set forth in the Constitution, nothing in the district court's rulings purported to add any further constitutional requirements for a grand jury petition. The relevant finding in the final order recites simply that the "Santa Fe County Clerk and the Court cannot verify that any of the signers of the subject petition are registered voters of Santa Fe County because the petition signers did not provide sufficient information to determine if any signer is a qualified voter in Santa Fe County."

**{13}** To the contrary, it was the appellate creation of a new three-step burden-shifting procedure that added provisions to the constitutional mandate, a creation that we conclude

4

is unjustified by law or reason. Neither the text of Article II, Section 14 nor any of our precedents prescribe shifting burdens or other special standards by which a district judge is constrained in exercising judicial discretion to determine whether a petition has met the constitutional requirements of being signed by a specified number of actual "registered voters of the county."

**{14}** Requiring a district judge to accept a grand jury petition as sufficient to order a grand jury inquiry simply because it contains signatures that are spelled the same as those of registered voters overlooks the judicial duty of the district court to ensure the actual validity of a grand jury petition. As we recognized in *Cook* and *McKenna*, we will honor "the public's constitutional right to petition the courts to convene a grand jury" by protecting "the balance struck by our constitution between the government and the people." *McKenna*, 1994-NMSC-102, ¶ 10 (citing *Cook* with approval). As part of that balance, the citizen petition right "checks the traditional process by permitting the citizens to trigger inquiry into matters that for reasons of political acquiescence, oversight, or impasse evade traditional means of inquiry." *Cook*, 1992-NMSC-041, ¶ 8. On the other side of the balance is our judicial responsibility to protect "the integrity and respectability of our judicial system" by preventing the grand jury process from being misused "for a fishing expedition (or worse, a witch hunt)." *McKenna*, 1994-NMSC-102, ¶ 17. As we recently observed in *Jones v. Murdoch*, 2009-NMSC-002, ¶¶ 13, 38-39, 145 N.M. 473, 200 P.3d 523, a court has a supervisory duty "to see that its grand jury and its process are not abused, or used for purposes of oppression and injustice" (internal quotation marks and citation omitted) (holding that the courts may enforce fairness responsibilities of a prosecutor to avoid unwarranted harm to targeted individuals).

**{15}** As a practical matter, there often is not an identifiable opponent before the court to shoulder the new burden of production imposed by the decision below because nothing in Article II, Section 14 requires naming a target of the proposed investigation. *See Cook*, 1992-NMSC-041, ¶ 14 (observing that "the petition need not articulate specific allegations of crime" so long as it simply "delimit[s] an area of inquiry that colorably lies within the permissible scope of grand jury inquiry"); *McKenna*, 1994-NMSC-102, ¶ 11 (emphasizing that "a petition to convene a grand jury need not name persons specifically, because grand juries investigate crimes or acts of malfeasance, not people"). There is nothing in the Constitution or any other law that requires notification to interested parties of a petition to convene a grand jury. The district court necessarily has the primary duty to ensure that the grand jury process is lawfully invoked, whether or not other interested parties learn of the request and seek to intervene.

**{16}** We must also recognize that the burden-shifting procedure would place a nearly insurmountable burden on a party who had adequate notice and a timely opportunity to attempt to oppose a grand jury petition. To impose a burden of producing evidence that a petition's signatories are *not* registered voters would necessarily require contacting each and every voter in the county with the same name as each signatory to have each establish that he or she was not the person who signed the petition, a task compounded by the frequency

5

of people who share common names, such as the district judge and one of the Court of Appeals judges in this case.

**{17}** Because we conclude that the three-step burden-shifting procedure is grounded in neither law nor practicality, we formally hold what we previously stated in addressing other issues in *Cook* and *McKenna*: determining whether grand jury petition signatories are actually registered voters of the county is a judicial determination committed to the sound discretion of the district court. Appellate review is therefore governed by an abuse of discretion standard.

**B.    The District Court Did Not Abuse Its Discretion in Rejecting Convisser's Petition**

**{18}** Having concluded that the registered voter mandate is a factual determination properly within the discretion of the district court, we address whether the district court abused its discretion when it rejected Convisser's petition.

**{19}** "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). "We will uphold a trial court's findings if they are supported by substantial evidence." *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 12, 140 N.M. 478, 143 P.3d 717. "Substantial evidence is that which a reasonable mind accepts as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). Where the exercise of judicial discretion involves fact-finding, "we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 28, 146 N.M. 473, 212 P.3d 361 (internal quotation marks and citation omitted). *See Ruiz v. Vigil-Giron*, 2008-NMSC-063, ¶ 13, 145 N.M. 280, 196 P.3d 1286 (reviewing whether a district court's determination of the validity of signatures for a ballot petition satisfied statutory requirements under the abuse of discretion standard); *see also State v. Gonzales*, 2005-NMSC-025, ¶ 21, 138 N.M. 271, 119 P.3d 151 ("Standards of review reflect the different functions trial and appellate courts serve. Disputes over historical facts are resolved by trial courts, and appellate courts give great deference to a trial court's factual determinations, reviewing to determine whether substantial evidence supports those determinations.").

**{20}** In this case, the district court not only considered the factual and legal materials submitted in writing, it conducted a full hearing on the issues before rejecting Convisser's petition due to an insufficient showing that the petition had been signed by the requisite number of registered Santa Fe County voters. Rather than rebut the sworn statement of the County Clerk that the signatures could not be verified or present other forms of evidence that the signatories were the registered voters, Convisser simply argued that matches between the names of signatories and names of registered voters should be conclusive. However, "matching" is not "verifying." To "match" is "[t]o be like (another)[;] . . . to resemble." *The*

6

*American Heritage Dictionary of the English Language* 1082 (5th ed. 2011). To "verify" is to "demonstrate the truth or accuracy of, as by the presentation of evidence." *Id.* at 1924. In this case, the County Clerk clearly stated that she could not verify that Convisser's petition was supported by the requisite number of registered voters, and Convisser provided no evidence to prove otherwise. Convisser apparently recognized that merely asserting that a signatory is a registered voter is constitutionally insufficient when he asked the County Clerk to verify his petition's signatures before he submitted the petition to the district court.

**{21}**   Voters' addresses, while not constitutionally required for a grand jury petition, play an important role in voter registration and verification of registered voter status. *See, e.g.*, NMSA 1978, § 1-4-5.1(I)(4)(a) (2007) (requiring one of several forms of identification "that shows the name and current address of the applicant" to support a voter registration application); *see also* NMSA 1978, § 1-4-5.3 (2007) (providing the means of voter registration when a person lacks a physical address); NMSA 1978, § 1-4-5.4(B) (2011) (requiring that the voter registration form include an applicant's residence); and NMSA 1978, § 1-4-17 (1993) (requiring a voter who changes addresses to submit a certificate of registration form).

**{22}**   Our statutes and administrative regulations provide numerous other instances in which addresses are required for petitions in order to aid in the process of signature verification. *See, e.g.*, NMSA 1978, § 1-7-2(A) (2011) (requiring that petitions to establish a political party in New Mexico include signatures and addresses of a requisite number of qualified voters); NMSA 1978, § 1-8-2(B) to (C) (2007) (requiring the county clerk to certify, based on the inclusion of addresses, that a requisite number of signatories to election nominating petitions voted in the last preceding general election); NMSA 1978, § 1-8-31(A) to (B) (2011) (limiting the number of election nominating petitions a person can sign and requiring signatories to include their registration addresses); NMSA 1978, § 1-15A-6 (2011) (requiring the secretary of state to verify as registered voters the requisite number of signatories to a presidential nominating petition); NMSA 1978, § 1-17-2 (1969) (requiring that a referendum petition include signatory addresses); *see also* 1.10.24.3, .7, .9 NMAC (04/15/2004) (requiring, under the Election Code, verification as "registered voters" of the signatories to a referendum petition); NMSA 1978, § 3-2-1(A) (2013) (requiring a petition seeking incorporation as a municipality to include the street addresses of "qualified elector" signatories); NMSA 1978, §§ 22-7-6 (1993) and 22-7-10(F) (1977) (requiring inclusion of "Address as Registered" for school board recall petitions as well as verification that a recall petition includes the requisite number of valid signatures); *accord State ex rel. Citizens for Quality Educ. v. Gallagher*, 1985-NMSC-030, ¶ 17, 102 N.M. 516, 697 P.2d 935 (holding that "where the information contained in the [school board recall] petition substantially complies with [the statutory requirements] and is sufficient to allow the county clerk to verify that the signer is a registered voter of the county and school district," the statute's purpose is satisfied).

**{23}**   We note that voter addresses play an important role in petition verification in the few states that provide for voter-initiated grand juries. While not dispositive, we also consider

the approaches taken by the five other states with similar grand jury provisions. Oklahoma is the only other state that provides such a right in its constitution. *See* Okla. Const. art. II, § 18 (A "grand jury shall be ordered by a district judge upon the filing of a petition therefor signed by qualified electors of the county."). Four other states provide for grand jury petitions in statutes. *See* Kan. Stat. Ann. § 22-3001(c) (2013); Neb. Rev. Stat. Ann. § 29-1401(3) (2010); Nev. Rev. Stat. Ann. § 6.132 (2001); N.D. Cent. Code Ann. § 29-10.1-02 (2013).

**{24}**   Of these five states, three—Kansas, Nebraska, and Nevada—explicitly require a grand jury petition to include signatories' addresses. *See* Kan. Stat. Ann. § 22-3001(c)(3) (requiring a petition to include a "signer's place of residence, giving the street and number or rural route number, if any"); Neb. Rev. Stat. Ann. § 32-628(1) (2012) (requiring "date of birth and street name and number, city or village, and zip code" for all petitions requiring signature verification); Nev. Rev. Stat. Ann. § 6.132(2)(a)(3) ("Each signature contained in the petition . . . [m]ust be followed by the address of the person signing the petition and the date on which the person is signing the petition.").

**{25}**   Regardless of the source of the authority, each of these five states explicitly requires signatory verification. Kansas and Nebraska rely on either the county clerk or a county election officer to verify signatories. *See* Kan. Stat. Ann. § 22-3001(c)(3) (requiring the county election officer to "determine whether the persons whose signatures are affixed to the petition are qualified electors of the county" after which the reviewing judge "shall then consider the petition and, if it is found that the petition is in proper form and bears the signatures of the required number of electors, a grand jury shall be ordered to be summoned"); Neb. Rev. Stat. Ann. § 29-1401.02(3) (2002) (requiring either the county clerk or the election commission to "determine the number of valid signatures appearing on such petitions and certify the findings"). Nevada requires the district court clerk to certify a grand jury petition as statutorily sufficient, including that it contains signatures of the requisite number of registered voters. *See* Nev. Rev. Stat. Ann. § 6.132(2)(a), (6)(a); *cf.* Nev. Rev. Stat. Ann. § 6.132(7) (requiring that a petition not be certified as insufficient when, absent other proof of disqualification, any signature does not correspond exactly with the signature on the official register of voters and the signatory's identity can be ascertained from the face of the petition); *see also* Nev. Rev. Stat. Ann. § 6.132(8)(b) (providing judicial review of any petition determined to be insufficient). North Dakota takes yet another approach, requiring a petition to "be verified on information and belief by at least three of the petitioners." N.D. Cent. Code Ann. § 29-10.1-04 (1971). Oklahoma vests verification directly with the presiding district court judge, who "shall determine whether or not that number meets the requirement of a grand jury petition pursuant to Section 18 of Article II of the Oklahoma Constitution." Okla. Stat. Ann. tit. 38, § 107 (1989).

**{26}**   The fact that all of the states with citizen-initiated grand jury provisions not only require the verification of signatories but most commonly do so through the use of voter addresses supports our conclusion that it was a reasonable exercise of judicial discretion for the district judge in this case to take into account the lack of voter addresses or other means

8

of confirming the registration status of the petition signatories.

{27}     In upholding the district court's exercise of discretion in this case, we do not rigidly require voters' addresses on grand jury petitions, however useful addresses may be to the County Clerk and the court. Other verification aids are theoretically possible, particularly in light of New Mexico statutory requirements that voter registration records maintained by election officials must contain other identifying information in addition to voter addresses, such as dates of birth and social security numbers. *See* § 1-4-5.4(B) ("The certificate of registration form shall require the following elements of information concerning the applicant for registration: name, gender, residence, municipality, post office, county of former registration, social security number, date of birth, political party affiliation, zip code, telephone number at the applicant's option and statement of qualification for voting"). Other options conceivably could include handwriting comparisons by a qualified witness or testimony of questionable signatories. *See* § 1-4-5.4(C) ("Provision shall be made for the usual signature or mark of the applicant, for the signature of the county clerk and for the dates of such signatures."). We need not address the sufficiency of any of those methods because none were presented to the district court in this case.

{28}     We do not intend to circumscribe the reasoned exercise of judicial discretion by dictating what particular forms of evidence the district court must consider in the course of determining whether a signatory is a registered voter, any more than we would do in the context of other factual determinations. We have long recognized that "[a]ny attempt to define the phrase 'judicial discretion' is generally regarded as a difficult and dangerous undertaking." *Pankey v. Hot Springs Nat'l Bank*, 1938-NMSC-067, ¶ 21, 42 N.M. 674, 84 P.2d 649. "But we venture that such a discretion as the law sanctions is not arbitrary, vague, or fanciful, nor is it to be controlled by humor or caprice, but is to be governed by principle and regular procedure for the accomplishment of the ends of right and justice." *Id.* Our approach is consistent with that of courts elsewhere. *See, e.g.*, *Shook v. Bd. of Cnty. Comm'rs of El Paso*, 543 F.3d 597, 603 (10th Cir. 2008) ("When applying an abuse of discretion standard of review, we necessarily recognize that there may be no single right answer to the question at hand, but a range of possible outcomes sustainable on the law and facts, and we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." (internal quotation marks and citation omitted)).

{29}     Accordingly, we hold that the district court did not abuse its discretion in rejecting Convisser's petition in this case. In order to provide guidance for all in the future, we ask our criminal rules committee to consider recommendations for rules and forms to assist in implementing the citizen grand jury petition requirements in a way that will "secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Rule 5-101(B) NMRA.

## III.    CONCLUSION

{30}     We reverse the Court of Appeals and affirm the district court's denial of Convisser's

grand jury petition.

**{31}    IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**BARBARA J. VIGIL, Justice**

**Topic Index for *Convisser v. Ecoversity*, No. 33,362**

**CONSTITUTIONAL LAW**
New Mexico Constitution, General

**CRIMINAL PROCEDURE**
Burden of Proof
Grand Jury

**GOVERNMENT**
Counties
Elections

**JUDGES**
Abuse of Discretion