This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ARTHUR FIRSTENBERG,**

Petitioner-Appellant,

v.                                                          **No. 33,441**

**CITY OF SANTA FE, a municipality,**
**and AT&T MOBILITY SERVICES, LLC,**

Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Arthur Firstenberg
Santa Fe, NM

Pro Se Appellant

City of Santa Fe
Marcos D. Martinez
Santa Fe, NM

for Appellee City of Santa Fe

Basham & Basham P.C.
Mark A. Basham
Santa Fe, NM

Mayer Brown LLP

Hans J. Germann
Chicago, IL

for Appellee AT&T Mobility Services, LLC

**MEMORANDUM OPINION**

**SUTIN, Judge.**

{1}     Petitioner Arthur Firstenberg filed a petition for a writ of mandamus seeking enforcement of a provision of the Santa Fe City Code (the Code) that Petitioner interpreted to require AT&T Mobility Services, LLC (AT&T) to apply for a special exception from the City of Santa Fe's Board of Adjustment before broadcasting "3G" signals instead of "2G" signals from its Santa Fe base stations.  After issuing an alternative writ of mandamus, requiring the City of Santa Fe (the City) to either commence enforcement proceedings against AT&T or to show cause why it had not done so, and after considering Petitioner's and the City's (joined by AT&T) respective arguments, the district court denied the petition.  Petitioner appeals the district court's decision to deny his petition for a writ of mandamus, raising a number of arguments in support of his request that this Court reverse the district court's decision.

{2}     We hold that Petitioner failed to meet the mandamus requirement of demonstrating that the City had a clear-cut mandatory duty to require AT&T to apply for a new special exception before emitting 3G signals from its Santa Fe base towers, and we affirm the district court's denial of his petition. Because we resolve

2

Petitioner's appeal on that basis, we do not consider Petitioner's various federal statutory and constitutional arguments by which he attempts to support his argument regarding the City's duty. Additionally, we reject Petitioner's argument that the district court's decision was marred by unethical judicial conduct that resulted in a due process violation.

**BACKGROUND**

{3}     Petitioner sought a writ of mandamus requiring the City to enforce the then-effective version of the Code, Santa Fe, N.M, City Code ch. 14, art. 14, § 14-3.6(B)(4)(b) (2001, amended 2011)[1]. The at-issue ordinance, Chapter 14, Article 14, constitutes the City's "Comprehensive Land Development Ordinance" that applies "to all land, buildings[,] and other structures, and their uses, located within the corporate limits of Santa Fe[.]" *See* Santa Fe, N.M., City Code § 14-1 (2011) (editor's note); § 14-1.6 (emphasis omitted). Chapter 14 of the Code is governed by a "general plan" that is "the basic policy guide for the administration of Chapter 14[,]" and the general

---

[1] Section 14-3.6(B)(4)(b) (2001) and other related provisions of the Code have since been modified. Although some modifications were made prior to the district court's decision in this matter, neither party argued below nor do they argue on appeal that the modifications render Petitioner's appeal moot. As did the district court, we limit our discussion to the then-applicable Code provisions. *See State ex rel. Edwards v. City of Clovis*, 1980-NMSC-039, ¶¶ 5-7, 94 N.M. 136, 607 P.2d 1154 (stating that "a [c]ity cannot, by enacting an ordinance, affect or change what would be the result of a pending [mandamus] action . . . based upon valid ordinances existing at the time of the application [for a writ of mandamus]").

plan "serves as the statement of goals, recommendations[,] and policies guiding the development of the [City's] physical environment[.]" Santa Fe, N.M., City Code § 14-1.3(A) (emphasis omitted); § 14-1.5 (emphasis omitted).

{4}     Chapter 14 of the Code contains specific regulations governing the physical placement and the physical appearance of telecommunication facilities. *See* Santa Fe, N.M., City Code § 14-6.1(E) (2001, amended 2011). Under the at-issue version of the Code, when a telecommunications company, such as AT&T, sought to place a telecommunication facility in a physical location not specifically authorized in Chapter 14, it was required to seek a "special exception" from the Board of Adjustment for such placement. *See* § 14-6.1(E)(6)(a)(i) (2001). AT&T acquired an unspecified number of special exceptions pursuant to which it operated "cellular phone base stations" within the City.

{5}     When Petitioner filed his petition for a writ of mandamus in December 2010, Section 14-3.6(B)(4)(b) (2001) provided:

> The special exceptions listed in this chapter, when granted, are considered granted for a specific use and intensity, any change of use or more intense use shall be allowed only if such change is approved by the Board of Adjustment under a special exception.

{6}     In his petition, Petitioner asserted that the cellular phone base stations that AT&T operated within the City pursuant to special exceptions emitted a 2G (second generation) signal until November 15, 2010, on which date AT&T began emitting 3G

4

(third generation) signals from those base stations. According to Petitioner, the result of AT&T switching from 2G to 3G signals was a vast increase in "the bandwidth of their radio emissions, as well as" an increase in the "average strength of their radio emissions and their capacity to handle voice and data traffic from cell phones and Smart Phones in Santa Fe." Petitioner argued that "[i]ncreasing the radio emissions and capacity of base stations constitutes a change in the intensity of use" that required the City to apply for a new special exception under Section 14-3.6(B)(4)(b) (2001). Petitioner argued further that owing to his disability (electromagnetic hypersensitivity), which requires him to avoid exposure to radio-frequency radiation from cell phones, cell towers, and other sources, he was beneficially interested in the enforcement of Section 14-3.6(B)(4)(b) (2001).

{7}     Prior to filing his petition for a writ of mandamus, Petitioner attended a November 17, 2010, public hearing before the City's Board of Adjustment (the Board) pertaining to AT&T's request to perform maintenance and repair at two of its base stations. Although the maintenance and repair at issue in the public hearing was unrelated to AT&T's switch from 2G to 3G (which had occurred two days prior to the public hearing), Petitioner and others, who also suffer from electromagnetic hypersensitivity, attended the hearing and raised the 2G-to-3G issue as it related to their disability in an effort to persuade the City to require AT&T to apply for a new

5

special exception for its switch to 3G.  Petitioner and his fellow sufferers were unsuccessful in their presentation to the Board, however, because the Board concluded that it lacked "jurisdiction" to consider objections to an increase in radio-frequency emissions.

{8}      Following that hearing, Petitioner filed his petition for a writ of mandamus.  In his petition, Petitioner claimed that mandamus was appropriate because he had "no plain, speedy[,] and adequate remedy in the ordinary [course] of law" to enforce what he interpreted as the City's "duty" to require AT&T to request a special exception pursuant to Section 14-3.6(B)(4)(b) (2001) before emitting 3G signals.  *See* NMSA 1978, § 44-2-5 (1915) (stating that a writ of mandamus "shall not issue in any case where there is a plain, speedy[,] and adequate remedy in the ordinary course of law").

{9}      The district court issued an alternative writ of mandamus, requiring the City to either require AT&T to "discontinue its 3G broadcasts within the City . . . within [thirty] days" and require it to submit an application for a special exception "for each base station from which it propose[d] to broadcast [3G] signals," or that the City "show cause . . . why it ha[d] not done so."[2]  Having considered the parties' respective

---

[2]  After the district court issued its alternative writ of mandamus, AT&T removed the case to federal court alleging federal question jurisdiction.  The United States District Court granted AT&T's motion to dismiss Petitioner's petition, but the Tenth Circuit Court of Appeals reversed that dismissal on the basis of a lack of federal jurisdiction over a claim that arose under a city ordinance.  *See Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1019-21 (10th Cir. 2012).  The matter was remanded to the district court, the proceedings in which

arguments in response to its alternative writ of mandamus, the district court concluded that Section 14-3.6(B)(4)(b) (2001) was not violated by AT&T's switch from 2G to 3G signals without first obtaining a special exception; accordingly, the district court denied the petition. While the district court concluded that "Petitioner's claim must be rejected" for the foregoing reason, it went further and found that Petitioner's claim was preempted by federal law, that Petitioner's argument related to the Americans with Disabilities Act failed to state a claim, that Petitioner's equal protection argument failed to establish that his right to equal protection was violated, and that Petitioner had not been denied due process.

{10}     On appeal from the district court's decision, Petitioner argues that it was unnecessary and improper for the district court, in resolving the mandamus issue, to have reached the issues implicating federal law; he nevertheless addresses the court's rulings, arguing that the court erred in each of its determinations. Because we conclude that the district court properly denied Petitioner's petition for a writ of mandamus based on the conclusion that Section 14-3.6(B)(4)(b) (2001) was not

---

are the subject of this appeal. We do not further address the federal proceedings in this Opinion.

violated by AT&T's switch from 2G to 3G, which issue resolves the mandamus issue before us, we do not consider Petitioner's remaining arguments[3].

**DISCUSSION**

{11}   We review the district court's decision to deny a petition for a writ of mandamus for an abuse of discretion. *See FastBucks of Roswell, N.M., LLC v. King*, 2013-NMCA-008, ¶ 7, 294 P.3d 1287 ("While mandamus procedure is technical in nature and closely regulated by statute, the writ is an extraordinary remedy, and district courts retain discretion when ruling on the propriety of issuing the writ in any given case." (alteration, internal quotation marks, and citations omitted)).  A district court decision that is based on a misapprehension of a law (or an ordinance), constitutes an abuse of discretion. *See Parkview Cmty. Ditch Ass'n v. Peper*, 2014-NMCA-049, ¶ 23, 323 P.3d 939; *see also City of Albuquerque v. Ryon*, 1987-NMSC-121, ¶ 6, 106 N.M. 600, 747 P.2d 246 (recognizing that a city ordinance that is promulgated pursuant to statutory authority has the "force of law"). Because the

---

[3]   Petitioner's remaining arguments relate to whether, pursuant to various federal laws, the City of Santa Fe must regulate the emission of radio-frequency waves. Petitioner's petition seeking a writ of mandamus was based only on the limited question whether a particular provision of the Code in fact regulates radio-frequency emissions.  Our conclusion that it does not resolves the mandamus issue. The broader issue whether, in accord with federal law, the City must or should regulate radio-frequency emissions has no bearing on the sole question in this appeal, which is whether the Code, as written, regulates those emissions.

8

mandamus action concerned a city ordinance, this Court, as well as the district court, must give deference to the city's interpretation of its own ordinance. *See Hyde v. Taos Mun.-Cnty. Zoning Auth.*, 1991-NMCA-114, ¶ 3, 113 N.M. 29, 822 P.2d 126.

{12}     "In order for mandamus to issue, the act to be compelled must be ministerial, constituting a nondiscretionary duty which the respondent is required to perform." *Hart v. City of Albuquerque*, 1999-NMCA-043, ¶ 17, 126 N.M. 753, 975 P.2d 366 (alteration, internal quotation marks, and citation omitted).   A nondiscretionary ministerial duty is one that the respondent is "required to perform by direction of law[.]" *Id.* (internal quotation marks and citation omitted).  In the absence of a "clear-cut mandatory duty" to perform the at-issue action, a writ of mandamus is not appropriate. *See State ex rel. Whitehead v. Vescovi-Dial*, 1997-NMCA-126, ¶ 4, 124 N.M. 375, 950 P.2d 818.

{13}     Because Petitioner seeks reversal of the district court's decision denying his petition for a writ of mandamus, the issue in this case boils down to whether AT&T violated the applicable version of Section 14-3.6(B)(4)(b) (2001) by emitting 3G instead of 2G signals without first obtaining a new special exception from the Board. If so, reversal is in order.  If not, the district court properly denied Petitioner's petition for a writ of mandamus.

**{14}** The district court's finding that AT&T's emission of 3G signals from its Santa Fe base stations did not violate Section 14-3.6(B)(4)(b) was based on two grounds. First, the court found that Petitioner "failed to identify anything in AT&T's existing special exceptions that limited AT&T's use of its wireless equipment to 2G signals." Second, the district court gave deference to and agreed "with the City's interpretation of its Code, under which the level of [radio-frequency] emissions from wireless telecommunications facilities are not an aspect of the 'intensity' of land use regulated by the City under the Code." We consider each of the district court's findings in turn.

**{15}** Petitioner does not attack the district court's finding that the special exceptions pursuant to which AT&T operated its Santa Fe base stations did not limit AT&T to emitting a 2G signal. Nor, on this record, could he reasonably do so. As stated by the district court, "the only evidence in the record regarding permitted levels of [radio-frequency] emissions" is from a 2008 memorandum to the Board from Daniel Esquibel, Land Use Planner Senior. Mr. Esquibel recommended approving AT&T's requested special exception subject to the condition, among others, that "following the construction of the facility [AT&T] shall provide certified documentation . . . that the telecommunication facility has been inspected for compliance with all [Federal Communications Commission (FCC)] existing [radio-frequency] emissions standards including but not limited to limiting human exposure to radio[-]frequency energy and

structural integrity." The Board's approval of the 2008 special exception did not qualify its approval by placing a limit on or even mentioning radio-frequency emissions, nor did it mention the terms "2G" or "second generation."

{16}     In sum, the only apparent limitation on AT&T's radio-frequency emissions anticipated in the special exception was that AT&T must comply with FCC standards. Petitioner did not argue below nor does he argue on appeal that AT&T's radio-frequency emissions fail to comply with FCC standards. In the absence of any record evidence indicating that AT&T's special exception was otherwise limited to any "intensity" of radio-frequency emissions and in the absence of any indication that the special exception limited AT&T to emission of a 2G signal, Petitioner's argument that AT&T exceeded its authorization under the 2008 or any other special exception is unavailing.

{17}     Petitioner also argues that the district court's conclusion that radio-frequency emissions are not regulated by the Code was "clearly erroneous." We disagree. The Code does not reflect that the Board or the City had a clear-cut mandatory duty to regulate radio-frequency emissions. *Vescovi-Dial*, 1997-NMCA-126, ¶ 4 (stating that mandamus is not appropriate unless there is a "clear-cut mandatory duty" to perform the at-issue action). While Petitioner has attempted to demonstrate otherwise by relying on pieced-together selections of text from various provisions of the Code and

11

employing false logic to attempt to persuade this Court that a special exception is a permit to emit a specific amount of radio-frequency radiation, we are not persuaded.

{18} Section 14-6.2(E) of the applicable version of the Code, governing "Telecommunication Facilities" reflects that the Code regulated the construction, placement, and physical characteristics of towers and antennas. *See* Santa Fe, N.M, City Code § 14-6.2(E)(3) (2001, amended 2011) (stating the general requirements of the telecommunications ordinances pertaining, among other things, to the lot size, aesthetics, lighting, building and safety codes, sign placement, property maintenance, landscaping, and dimensions of the towers or antennas). Notably absent from these provisions was any stated limit on or even any mention of the term "radio-frequency." *Id.*

{19} Likewise, the Code's provisions related specifically to "special exceptions" did not purport to govern, regulate, or in any way limit the intensity of radio-frequency emissions. *See generally* § 14-6.2(E)(6) (2001). Rather, the obvious purpose of a special exception was to ensure that telecommunication towers and antennas that were constructed in zoning districts, where they were otherwise not permitted, were constructed pursuant to the Board's approval and pursuant to certain physical, geographic, and aesthetic specifications. *See, e.g.*, § 14-6.2(E)(6)(a)(i) (2001) (stating that "[a] special exception shall be required for the construction and placement of all

towers and antenna in all zoning districts unless said construction or placement is otherwise permitted or administratively approved"); § 14-6.2(E)(6)(a)(iii) (2001) (stating the height specifications in certain zoning districts); § 14-6.2(E)(6)(a)(ix), (xi), (xii) (2001) (governing placement of telecommunications equipment within historical districts and governing the fencing, walls, and landscaping requirements).

{20}    In sum, the Code's provisions governing telecommunication facilities, generally, and special exceptions, specifically, do not demonstrate that the Code purported to regulate radio-frequency emissions in any manner, including their "intensity." Under these circumstances, we conclude that it is appropriate to defer to the City's conclusion that "nothing in the Code required the City to regulate AT&T's alleged increase in [radio-frequency] emissions from its existing facilities." Because the district court reached the same conclusion when it found that radio-frequency "emissions are not regulated under [the Code's] provisions[,]" we agree with the district court's determination in that regard.

{21}    We conclude that the district court did not abuse its discretion by denying Petitioner's petition for a writ of mandamus. Petitioner failed to demonstrate that AT&T's special exception limited its emission of radio-frequency radiation to a specific level or that AT&T exceeded any such limit by emitting a 3G instead of a 2G signal from its Santa Fe base stations. Furthermore, the relevant provisions of the

13

Code comport with the City's interpretation of them, leading us to conclude that the City's interpretation deserves this Court's and the district court's deference. *See Hyde*, 1991-NMCA-114, ¶¶ 3, 5 (stating that deference is owed to a city's interpretation of its own ordinance, provided that it is reasonable). Because Petitioner has failed to demonstrate that the City had a "clear-cut mandatory duty" to require AT&T to obtain a new special exception before emitting 3G signals, the writ of mandamus was properly denied. *Viscovi-Dial*, 1997-NMCA-126, ¶ 4 (stating the standard by which the propriety of granting a writ of mandamus is measured).

{22}     Finally, we address Petitioner's argument that "the district court violated judicial ethics and due process by adopting verbatim the arguments in [the City's and AT&T's] ex parte brief." Without providing any citations to the record in support of his argument, Petitioner claims that the district court requested the parties to submit a "round of briefing, styled as 'proposed decisions,' and adopted as its opinion the brief of [the City and AT&T], which was submitted ex parte." *See* Rule 12-213(A)(4) NMRA (requiring an appellant to provide record proper citations in support of each argument). Petitioner claims that, as a result, his right to due process was violated, and he argues further that this alone is a basis for reversal. We disagree.

{23}     The City and AT&T argue that, as a matter of inadvertence, it failed to serve Petitioner with a copy of its proposed decision until the day after it was submitted to

the district court. Petitioner concedes that he received that copy, and in his reply brief, he concedes that he was not prejudiced by the "ex parte submission[.]" Rather, he argues that he was prejudiced by the district court's "almost . . . verbatim" adoption of the City's and AT&T's proposed decision that caused the prejudice.

**{24}** Absent a showing that the district court "abdicated its judicial responsibility[,]" its adoption of a party's proposed findings of fact and conclusions of law does not constitute error. *Empire W. Cos. v. Albuquerque Testing Labs., Inc.*, 1990-NMSC-096, ¶ 25, 110 N.M. 790, 800 P.2d 725. Petitioner does not demonstrate that the district court abdicated its decision-making responsibility in this case. Furthermore, the record belies Petitioner's assertion that the district court adopted the City's and AT&T's proposed decision verbatim. Instead, the record reveals that while the district court incorporated portions of the proposed decision in its order, the order was formulated by the district court and was ultimately the product of the court's independent decision-making process. Petitioner fails to demonstrate that he was prejudiced by the district court's reliance on the City's and AT&T's proposed decision, and his mere assertion of prejudice is insufficient to garner reversal. *See In re Convisser*, 2010-NMSC-037, ¶ 24, 148 N.M. 732, 242 P.3d 299 (recognizing that a mere assertion of prejudice, without demonstrating how the result would have been different but for the alleged error, is not a showing of prejudice).

15

**CONCLUSION**

**{25}** We affirm.

**{26}** **IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**CYNTHIA A. FRY, Judge**